**Emma LUCAS, Administratrix of the Estate of George Lucas, (Deceased), et al., Plaintiffs-Appellees,**

v.

**Edwin F. TURNER, et al., Defendants.**

**Appeal of Richard M. DALEY, State's Attorney of Cook County, Illinois, Non-Party Deponent-Witness, Appellant.**

No. 82–2793.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1983.

Decided Jan. 13, 1984.

As Amended Jan. 18, 1984.

David S. Allen, Asst. State's Atty., Chicago, Ill., for defendants.

Jeffrey H. Hass, People Law Office, Chicago, Ill., for plaintiffs-appellees.

Before ESCHBACH and COFFEY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.[*]

COFFEY, Circuit Judge.

The State's Attorney of Cook County, Illinois, appeals from an order directing him to release all transcripts and materials of a state grand jury investigation into the death of George Lucas, to the plaintiffs-appellees' attorneys for use in a civil rights action brought under 42 U.S.C. § 1983. We reverse.

I.

George Lucas, a 23-year-old black man, died on February 9, 1973 while a pre-trial detainee in the Cook County Jail. The Cook County Coroner's office commenced an inquest shortly thereafter and determined that Lucas died of natural causes. George Lucas' mother and two children filed this lawsuit with the United States Federal District Court for the Northern District of Illinois in February, 1974, pursuant to 42 U.S.C. § 1983. The complaint alleged that six correctional officers of the Cook County Jail caused Lucas' death by beating, strangling, and suffocating him. In 1975, the Cook County State's Attorney's Office convened State Grand Jury 381 to investigate Lucas' death. The grand jury returned no indictment. Discovery in the federal civil rights lawsuit was stayed from March 14, 1975, until August 7, 1975, pending completion of the state grand jury investigation.

In June, 1976, counsel for the plaintiffs took depositions of the six correctional officers named as defendants in the action. In December, 1976, plaintiffs amended their complaint and joined the Board of the Cook County Department of Corrections and Winston Moore, the Director of the Cook

---

[*] The Honorable Anthony J. Celebrezze, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

County Jail at the time of Lucas' death. The court subsequently dismissed the board members from the action, and on March 31, 1978, Winston Moore was deposed. Over three years later, on December 15, 1981, one of the plaintiffs' two attorneys was granted leave to withdraw and substitute counsel appeared. The trial court, after granting one discovery extension, ordered that discovery be terminated on March 22, 1982. On the date discovery was to terminate, some four years after plaintiffs' last discovery, plaintiffs filed an "eleventh-hour" motion to compel production of the minutes of the grand jury which investigated the death of George Lucas. They asserted that the grand jury testimony was highly relevant, valuable and necessary to their case. They also alleged that the defendants attempted to "cover-up" the death of George Lucas, that the defendants' grand jury testimony would prove an intent to hide what really occurred and that the defendants' grand jury testimony would be inconsistent with their testimony at trial. On March 23, 1982, the plaintiffs served a subpoena *duces tecum* upon the custodian of the grand jury minutes, Richard M. Daley, Cook County State's Attorney. On April 1, 1982, the federal district court directed the plaintiffs to petition Chief Judge Fitzgerald of the Cook County Circuit Court, the court with supervisory powers over the grand jury, for the release of the requested materials. The plaintiffs filed that petition on May 17, 1982.

Judge Fitzgerald subsequently denied plaintiffs' request for the grand jury materials stating that it seemed "to be a very broad request for testimony" and that there was "truly no showing [of] materiality or relevancy in this case." Judge Fitzgerald concluded:

"I don't see any compelling circumstances here other than breach of the secrecy before the grand jury in order to release testimony so it might be used for impeachment.

\* \* \* \* \* \*

"[A]ny impeachment that might be forth coming [sic] certainly could be derived by

the use of the testimony that they used in the taking of the depositions."

Counsel for plaintiffs disagreed with Judge Fitzgerald's ruling and accused the judge of trying "to protect the defendants."

On May 12, 1982, the plaintiffs sought further discovery by requesting that defendants produce the jail records of three persons who were incarcerated in the Cook County Jail with George Lucas. The defendants located and produced two of the three records requested by searching through old jail records.

Over eight years after the filing of their lawsuit, on May 26, 1982, plaintiffs renewed their request in the federal district court for an order requiring disclosure of the grand jury minutes. Judge Parsons held a hearing and on July 30, 1982, ordered the production of the minutes of Grand Jury Number 381. Judge Parsons found that the plaintiffs had a particularized need for the grand jury materials based on the following reasons:

"(a) It is highly probable that these materials will contain the names and testimony of witnesses heretofore unknown to Plaintiffs and whose testimony will be material and relevant to the issues of this case;

"(b) Some of said witnesses may be unavailable via subpoena. One person who is known to have been a witness is deceased, and his testimony may be the only eye witness testimony for Plaintiffs' use at trial;

"(c) Some or all of the Defendants herein testified at this Grand Jury proceeding, and said testimony, may be admissible under civil rules and relevant as admissions or for assuring the credibility of their testimony at trial, (i.e. either as impeachment or to refresh recollection);

"(d) The fact that this incident transpired nearly ten years ago, that all criminal matters with relation thereto are expired, and that this testimony is almost contemporaneous with the incident in question, makes it highly probably [sic] that the witnesses' testimony at the

Grand Jury will be substantially less effected [sic] by the loss of memory."

Judge Parsons also found that "any specific need for secrecy has long since passed," that the passage of time has greatly decreased concerns for the security of witnesses and that the court's protective order would substantially satisfy any such concerns.

On August 5, 1982, the State's Attorney filed a motion to vacate the district court's July 30, 1982, disclosure order. The court treated this motion as one for reconsideration. In this motion the State's Attorney challenged the plaintiffs' showing of particularized need. The district court responded by ordering the plaintiffs to answer these challenges and to provide an affidavit in support of their position. Attorney Hass' affidavit asserted that while representing George Lucas' mother before the Coroner's inquest, plaintiffs' attorneys had talked to certain prisoners who had allegedly witnessed events surrounding the death of George Lucas. The prisoners expressed a fear of retaliation and pursuant to a court order were transferred outside of Cook County. These prisoners indicated that others had witnessed George Lucas' death, however, plaintiffs' attorneys were unable to get these witnesses to come forward. The affidavit fails to specify the identity of these "other witnesses." Two of the prisoners, Frank Davis and Ron Woodard, testified before the Coroner's inquest while another prisoner, Robert Miller, did not testify. Hass' affidavit also states that while the grand jury was convened, he was informed by William Prendergast, the Assistant State's Attorney in charge of the grand jury, that other evidence existed besides that presented at the Coroner's inquest. That evidence allegedly included information concerning a witness who observed defendant Winston Moore striking Lucas sometime before his death. Hass averred that Moore's attorney had indicated that Moore was to testify before the grand jury concerning those claims. Defendant Moore

did not testify before the Coroner's inquest and thus his grand jury testimony would be the only evidence of his prior statements regarding Lucas' death.[1]

Hass' affidavit additionally stated that other persons who remained unknown to him testified before the grand jury, and thus release of the transcripts is necessary to locate these "unknown witnesses." Further, the affidavit asserts that the defendants' testimony given before the grand jury is necessary to assure the reliability of their testimony at trial. The affidavit further recites that three witnesses known to plaintiffs *may* have testified before the grand jury and that of the three, Frank Davis is deceased, Ron Woodard resides in California and will testify if plaintiffs can "keep in touch with him," and Robert Miller resides in Texas and refuses to make himself available to testify. However, through a motion filed December 7, 1983, plaintiffs advised this court that they deposed Miller on November 15, 1983, that he did testify before the grand jury and that he is now willing to testify at trial. Two other witnesses, Mike LaFollette and Lloyd James, testified before the Coroner's inquest, but to date the plaintiffs have been unable to locate them to obtain their testimony in this action. Attorney Haas' affidavit concluded by stating that "the Grand Jury minutes would be significant and perhaps critical to [plaintiffs'] ability to present their case."

Based on the materials provided by the plaintiffs, the district court denied the State's Attorney's motion for reconsideration and subsequently denied the State's Attorney's motion for a stay pending appeal. On November 29, 1982, this court granted the State's Attorney's emergency motion for a stay pending appeal. Plaintiffs' motion to dismiss the appeal was denied on December 13, 1982. On appeal the State's Attorney argues that the district court abused its discretion in granting discovery of the grand jury materials since (1)

---

1. The plaintiffs deposed Moore but did not question him regarding the allegation that he

struck Lucas sometime before Lucas' death.

the interest in preserving the secrecy of grand jury proceedings should prevent their disclosure; (2) the plaintiffs failed to establish a particularized need for those materials; and (3) the plaintiffs' request was overbroad. The State's Attorney also argues that the federal district court failed to reconcile its decision with that of the state supervisory court.

## II.

Since we are asked to rule upon the disclosure of proceedings before a state rather than federal grand jury, we must first discuss the power of a federal court to compel such disclosure. In *Socialist Workers Party v. Grubisic,* 619 F.2d 641 (7th Cir.1980), the State's Attorney for Cook County appealed from a federal district court order requiring him to produce the transcripts of a particular state grand jury for use in a federal civil rights lawsuit. This court held:

> "[W]hen state grand jury proceedings are subject to disclosure, comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy. Otherwise the potential threat of disclosure orders in subsequent federal civil litigation would seriously weaken the state court's control over the secrecy of this essential component of its criminal justice system."

*Id.* at 644. The court went on to note that: "federal law determines the scope of the privilege covering these materials, and the requirement that these plaintiffs first

seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in this federal civil rights case. This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered. On the other hand, although the state court may determine that the materials are privileged under state law, only the federal court may determine whether the materials are privileged under federal common law. In this way the federal interest in disclosure will be properly considered preliminarily to a final decision on the privilege issue."

*Id.* In the present case, the district court ordered the plaintiffs to first seek release of the grand jury evidence and exhibits in state court. The Cook County Circuit Court subsequently refused to disclose the grand jury testimony, finding that the plaintiffs' request was both "very broad" and lacked a showing of materiality or relevancy. Since the *Grubisic* procedures were followed, the district court could then proceed to a determination of the extent the materials deserved protection under federal law.

## III.

There is "a long established policy that maintains the secrecy of ... grand jury proceedings ...." *United States v. Procter & Gamble,* 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958) (footnote omitted). Rule 6 of the Federal Rules of Criminal Procedure provides for secrecy in grand jury proceedings.[2] The rule codifies

---

2. Rule 6 of the Federal Rules of Criminal Procedure provides in pertinent part:

   "(e) RECORDING AND DISCLOSURE OF PROCEEDINGS.

   \* \* \* \* \* \*

   (2) *General Rule of Secrecy.*—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No

obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) *Exceptions.*

\* \* \* \* \* \*

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

\* \* \* \* \* \*

the long-standing tradition of the secrecy of grand jury proceedings.

"The Supreme Court has recognized the following reasons for grand jury secrecy:

to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial, where there was no probability of guilt.

Douglas Oil Co., 441 U.S. at 219 n. 10, 99 S.Ct. at 1673 n. 10; Procter & Gamble, 356 U.S. at 681–82 n. 6, 78 S.Ct. at 986 n. 6, quoting United States v. Rose, 215 F.2d 617, 628–29 (3d Cir.1954). Moreover, 'the grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow.' Procter & Gamble, 356 U.S. at 682, 78 S.Ct. at 986."

Matter of Grand Jury Proceedings, Miller Brewing Co., 687 F.2d 1079, 1090 n. 14 (7th Cir.1982).

In United States v. Sells Engineering, Inc., —— U.S. ——, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), the Supreme Court reiterated the rationale for their traditional recognition of secrecy of grand jury proceedings.

"[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appear before the grand jury would be less likely to testify fully and frankly, as they would

be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."

103 S.Ct. at 3138 (quoting Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218–219, 99 S.Ct. 1667, 1672–1673, 60 L.Ed.2d 156 (1979) (footnotes and citation omitted)). "For all of these reasons, courts have been reluctant to lift unnecessarily the veil of secrecy from the grand jury." Douglas Oil, 441 U.S. at 220, 99 S.Ct. at 1673.

One of the principal reasons for preserving the secrecy of grand jury proceedings is to protect the reputations of both witnesses and those under investigation. See In re Grand Jury Investigation of Cuisinarts, Inc., 665 F.2d 24, 33 (2nd Cir.1981), cert. denied, —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed. 945 (1983). "Grand jury secrecy, then, is 'as important for the protection of the innocent as for the pursuit of the guilty.'" Sells Engineering, Inc., 103 S.Ct. at 3138 (quoting United States v. Johnson, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)). The need for such protection becomes apparent when it is recognized that a grand jury has extraordinary investigative powers and can indict or call persons before it based upon hearsay or even the grand jurors' personal knowledge. See Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). Secrecy of such proceedings also protects the safety of those who are called to testify before it.

"The possibility of retaliation cannot be ignored as a reason for preserving grand jury secrecy. It is apparent, therefore, that secrecy protects, and was intended to protect, those who appear before the grand jury as witnesses. Indeed, wit-

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time,

and under such conditions as the court may direct."

nesses before the grand jury, because they are aware of the traditional secrecy enveloping these proceedings, have reason to assume that their presence and their testimony will not be revealed." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d at 32–33 (footnote omitted).

◼ Because of the public policy reasons which favor preserving the secrecy afforded grand jury proceedings, the Supreme Court has consistently held that a strong showing of particularized need is required before any grand jury materials are disclosed. *United States v. Sells Engineering, Inc.*, 103 S.Ct. at 3148; *Illinois v. Abbott & Associates, Inc.*, —— U.S. ——, 103 S.Ct. 1356, 1361, 75 L.Ed.2d 281 (1983); *Douglas Oil*, 441 U.S. at 217–24, 99 S.Ct. at 1671–75. While recognizing that courts are and should be reluctant to lift the veil of secrecy surrounding grand jury proceedings, the Supreme Court has held "that in some situations justice may demand that *discrete portions* of transcripts be made available for use in subsequent proceedings." *Douglas Oil*, 441 U.S. at 219–20, 99 S.Ct. at 1673 (emphasis added). In a case where a particularized need is established "the secrecy of the proceedings is lifted discretely and limitedly." *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

◼ In *Douglas Oil* the Supreme Court delineated the particularized need standard:

"Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."

441 U.S. at 222, 99 S.Ct. at 1674 (footnote omitted). *See also United States v. Sells Engineering, Inc.*, 103 S.Ct. at 3148; *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Our circuit has held that "[i]n determining whether disclo-sure of grand jury matters is appropriate in any given case, a court must exercise substantial discretion, weighing the need for secrecy against the need for disclosure of specified documents and testimony occurring before the grand jury." *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1088 (7th Cir.1982) (*citing Douglas Oil Co.*, 441 U.S. at 223–24, 99 S.Ct. at 1675).

"[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider *not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries.* Persons called upon to testify *will consider the likelihood that their testimony may one day be disclosed to outside parties.* Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. . . . Thus, *the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.*"

*Douglas Oil Co.*, 441 U.S. at 223, 99 S.Ct. at 1675 (footnote omitted, emphasis added). The burden of demonstrating that the need for disclosure is greater than the public interest in secrecy rests with the party seeking disclosure. *Id.* It is clear that this burden is a heavy one to overcome.

◼ Also relevant to the determination of whether plaintiffs have met the particularized need standard is the type of grand jury materials sought. Here, plaintiffs have made an all-inclusive, sweeping request for *all* grand jury transcripts and exhibits relevant to the incarceration and death of George Lucas. We have held that "[a] request for grand jury documents may evoke different, and less exacting considerations than a request for transcripts of grand jury testimony." *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1089 (7th Cir.1982). "Thus, when a particular document is sought only 'for its own sake—for its intrinsic value in the furtherance of a lawful investigation,' it does

not necessarily constitute a matter occurring before the grand jury." *Id.* (*quoting United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960)). *See also United States v. Stanford,* 589 F.2d 285, 291 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *State of Illinois v. Sarbaugh,* 552 F.2d 768, 772 n. 2 (7th Cir.1977), *cert. denied sub nom. J.L. Simmons v. Illinois,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). Against this background of court decisions dealing with grand jury secrecy, we must now determine whether or not the plaintiffs in this case have shown the requisite particularized need entitling them to disclosure of the grand jury materials at issue.

## IV.

A. Whether Release of the Grand Jury Materials is Necessary to Avoid an Injustice.

The first of the three factors we must examine to determine if plaintiffs have met the particularized need standard set forth in *Douglas Oil,* is whether disclosure of the grand jury materials is necessary to avoid possible injustice in the civil rights lawsuit brought by Mr. Lucas' family. Plaintiffs have failed to demonstrate, either in their counsel's affidavit, or in their briefs to this court, that the grand jury materials contain information which is absolutely necessary, rather than simply beneficial to their § 1983 action and that the information contained therein could not have been obtained through normal discovery channels. The affidavit in support of the disclosure order, which merely asserts in this regard that the "Grand Jury minutes would be significant and *perhaps critical* to their ability to present their case," clearly fails to delineate any facts to support this proposition (emphasis added). It should be pointed out that the evidence before the grand jury was insufficient to convince the grand jury that criminal indictments should be issued. Plaintiffs' mere unsubstantiated allegations that a cover-up occurred and that the grand jury materials could help prove this is nothing but pure conjecture and speculation. In

*Procter & Gamble,* the Supreme Court ruled that "[i]t is only when the criminal procedure is subverted that 'good cause' for *wholesale* discovery and production of a grand jury transcript would be warranted. 356 U.S. at 684, 78 S.Ct. at 987 (emphasis original). As was the case in *Procter & Gamble,* "[n]o such showing was made here," *Id.* No evidence exists that anyone flouted the secrecy of the grand jury. Essentially the plaintiffs' allegations failed to provide the detailed and concrete averments necessary to compel disclosure. Their request for the grand jury materials based on their affidavit is nothing more than a request for authorization to engage in a fishing expedition.

To bolster their position in this regard, plaintiffs allege, for the first time on appeal, that the defendants "had access to and used" grand jury testimony to prepare for deposition and thus injustice will result if disclosure is denied due to unequal access to the grand jury materials. This allegation is based solely upon a statement made by one of the defendant correctional officers, Isaac Chatman, at his 1976 deposition. During that deposition, Chatman stated that someone from the State's Attorney's Office showed him his grand jury testimony before his appearance. While unequal access is a factor worthy of consideration, the record as it now stands does not substantiate this argument as it does not demonstrate that there was unequal access. The single statement on which the plaintiffs rest their argument is simply insufficient to present a genuine issue of fact regarding unequal access. In our view, plaintiffs have made no effort prior to their arguments to this court, to substantiate this contention through more complete and detailed discovery or other investigative procedures usually undertaken by well-prepared counsel. Without concrete evidence, we will not assume there was unequal access.

We empathize with Lucas' survivors because of the delays they have been subjected to in their civil rights lawsuit. It is more than apparent, however, that much of the delay has been the result of the plain-

tiffs' attorneys own inactivity. While their new counsel might save time and expense if the storehouse of information present in the grand jury materials were obtained, the Supreme Court discounts this reason as a justification for access. The Court has recognized that a "civil lawyer's need is ordinarily nothing more than a matter of saving time and expense." *United States v. Sells Engineering, Inc.,* 103 S.Ct. at 3142. It has "consistently rejected the argument that such savings can justify a breach of grand jury secrecy." *Id.* We are in accord. This same point was also discussed in the Court's *Procter & Gamble* decision:

> "If the grand jury transcript were made available, discovery through depositions, which might involve delay and substantial costs, would be avoided. Yet these showings fall short of proof that without the transcript [the plaintiffs] would be greatly prejudiced or that without reference to it an injustice would be done."

356 U.S. at 682, 78 S.Ct. at 986. The preceding reasoning seems especially appropriate here where the record is replete with examples of extensive delays in discovery, e.g., almost two years and four years, resulting from the plaintiffs' previous attorneys' lethargic attitude toward the present litigation.[3] After a thorough examination of the record and the case law, we refuse to conclude that the disclosure of the grand jury materials the plaintiffs seek in this case is necessary to avoid possible injustice in their § 1983 action, and thus the first of the three factors set forth in *Douglas Oil* does not weigh in favor of the plaintiffs' discovery request. While the plaintiffs' action is a legitimate means to vindicate Mr. Lucas' civil rights "[a] legitimate interest . . . [in obtaining disclosure] is not necessarily compelling." *In Re Grand Jury Investigation No. 78–184,* 642 F.2d 1184, 1191 (9th Cir.1981), *affirmed sub nom. United States*

*v. Sells Engineering, Inc.,* —— U.S. ——, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

**B. Whether the Need for Disclosure is Greater than the Need for Continued Secrecy.**

We must next consider whether the need for disclosure is greater than the need for continued secrecy. On appeal plaintiffs advance several reasons they contend establish a particularized need for disclosure. The plaintiffs have indicated to this court that they are aware of six individuals who were prisoners in the Cook County Jail at the time of Lucas' death: Mike LaFollette, Lamarre Patrick, Lloyd James, Frank Davis, Robert Miller, and Ron Woodard. Plaintiffs' counsel, Haas, avers that "current efforts" to locate LaFollette and James have been unsuccessful and that their grand jury testimony *may help* locate these witnesses for trial. Plaintiffs sought the jail records of LaFollette, Patrick and James in discovery, but jail authorities only located the records pertaining to LaFollette and James.[4] The bare assertion that "current efforts" to locate certain witnesses have been unsuccessful is insufficient by itself to convince this court that these individuals' grand jury testimony, if it exists, is required to locate them. Plaintiffs must first recite their specific efforts to ascertain the whereabouts of these individuals in order to satisfy the court that they have exhausted all other usual means used in attempting to locate desired witnesses. Assuming such efforts had been demonstrated to the court, the proper way to obtain information which might be helpful in locating these individuals would be to make a specific, narrowly drawn request for information to help in locating these individuals, rather than the all-encompassing request made for any and *all* of the grand jury testimony given by these individuals. In such a case, the district court would then be required to review the testimony *in camera* to determine what, if any, information might help

---

**3.** Six depositions were taken in June of 1976. No further discovery was conducted until March of 1978, when one additional deposition was taken. The record reveals no subsequent discovery until March of 1982, when the grand jury materials were sought.

**4.** Plaintiffs do not state that the grand jury testimony of Lamarre Patrick, if it exists, is sought to assist in locating him.

locate these individuals. *See Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d at 1096 n. 24. *Cf. E.E.O.C. v. University of Notre Dame du Lac,* 715 F.2d 331, 338 (7th Cir.1983) (district court required to review redacted faculty peer review material to determine if redactions are necessary to prevent disclosure of identities). In any event, we believe it is unlikely that LaFollette's and James' grand jury testimony given in 1975 would reveal their present whereabouts some eight years later.

Plaintiffs also seek the grand jury testimony of those former prisoner witnesses who are allegedly unavailable for trial to act as a substitute for in-court testimony. With regard to this prong of the plaintiffs' argument, the district court held, as we previously mentioned, that "[s]ome of said witnesses may be unavailable via subpoena." We believe this general conclusion does not find adequate support in the record. Plaintiffs thus far have only demonstrated that one of the known witnesses, Davis, is conclusively unavailable as he is deceased. Woodard, now living in California, is available for trial if plaintiffs are able to "keep in touch" with him. Just as plaintiffs failed to convince us that LaFollette and James are unlocatable by demonstrating that diligent efforts were undertaken, such as use of the ordinary means of locating witnesses (e.g., skip-tracing services), the reasons they set forth for obtaining Woodard's grand jury testimony are likewise unconvincing as they have not provided adequate proof that he is in fact unavailable under Fed.R.Evid. 804(a). For example, the record does not disclose what, if any, efforts have been made to depose Woodard. Furthermore, Coroner's inquest testimony is available for four of the prisoner witnesses: LaFollette, James, Davis and Woodard. Plaintiffs have failed to demonstrate to the satisfaction of this court why the grand jury testimony of these witnesses would be any more beneficial to their cause than their Coroner's inquest testimony which exists and could be used as substitute testimony at trial if the unavailability of these witnesses is in fact established.[5] The plaintiffs' mere speculation and conjecture that the grand jury testimony of these witnesses will be more favorable to their case falls far short of rising to a showing of particularized need.[6]

Plaintiffs further argue that disclosure is warranted because the grand jury testimony of the defendants is necessary to assure the reliability of their testimony at trial. The district court agreed that the plaintiffs had established a particularized need in this regard, stating "[grand jury] testimony, may be admissible under civil rules and relevant as admissions or for assuring the credibility of [the defendant's] testimony at trial...." This has been recognized as a proper use for grand jury testimony and has provided the basis for a showing of particularized need in other cases. *See State of Wisconsin v. Schaffer,* 565 F.2d 961, 966 (7th Cir.1977); *State of Illinois v. Sarbaugh,* 552 F.2d 768, 776 (7th Cir.1977). Disclosure of grand jury testimony on this basis must be discrete and limited. *United States v. Procter & Gamble,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). In *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1960) the Court held that a trial judge erred in not making grand jury minutes concerning government witnesses available to defendant's counsel. The Supreme Court in *Douglas Oil* recognized, however, in sharp contrast to the case now before us, that in *Dennis* "the defendants had shown it to be *likely* that the witnesses' testimony at trial was inconsistent with their prior grand jury testimony." *Douglas Oil Co.,* 441 U.S. at 222, 99 S.Ct. at 1674 emphasis added. We hold that in the present case, unlike *Dennis,* the plaintiffs

---

5. The State's Attorney advised this court in his November 22, 1983 motion that the district court has ruled Davis' Coroner's Inquest testimony admissible pursuant to Fed.R.Evid. 804(b)(1), the "former testimony exception" to the hearsay rule.

6. Robert Miller's grand jury testimony was also sought as a substitute for his in-court testimony. He has since become available as a witness at trial.

have not demonstrated to this court that the defendants' trial testimony is *likely* to vary from their grand jury testimony. There is not a scintilla of evidence in the record to indicate that the defendants are presently less willing to truthfully testify than they were at the time of their testimony before the grand jury. We also note that Coroner's inquest and/or deposition testimony exists for all of the defendants and is available for impeachment purposes at trial. Again, plaintiffs have not shown that this testimony is *likely* to have varied from defendants' grand jury testimony. Without a valid legal or factual basis to question defendants' veracity at trial the plaintiffs' allegations have not risen to the requisite showing of particularized need.

■ Plaintiffs also wish to utilize the grand jury testimony to refresh witnesses' recollection. The district court, in this regard, simply noted that since the grand jury testimony was "almost contemporaneous with the incident." [7] it would be "substantially less effected [sic] by the loss of memory." [8] While use of grand jury testimony can be justified based on the need to refresh a witness' recollection, *Douglas Oil Co.*, 441 U.S. at 222, 99 S.Ct. at 1674, *State of Illinois v. Sarbaugh*, 552 F.2d at 776, the district court's statement that such testimony will be "less effected [sic] by the loss of memory" frankly does not demonstrate a particularized need. A mere statement that prior testimony will be less affected by loss of memory simply does not establish that any particular witness's memory needs to be refreshed at the present time. The Fifth Circuit recently upheld the release of a defendant witness's grand jury transcript after he "experienced considerable and frequent difficulty in recalling the events about which he was questioned." *In Re Corrugated Container Antitrust Litigation*, 687 F.2d 52, 55 (5th Cir.1982). Our Supreme Court has held that:

"use of grand jury testimony for the purpose of refreshing the recollection of a witness rests in the sound discretion of the trial judge.... He sees the witness, can appraise his hostility, recalcitrance, and evasiveness or his need for some refreshing material, and can determine whether or not under all the circumstances the use of grand jury minutes is necessary or appropriate for refreshing his recollection."

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940) (citations omitted). From our examination of the record we discern no specific showing nor a shred of evidence provided to the district court that any witness except Robert Miller has previously experienced difficulty remembering the circumstances surrounding the death of George Lucas. Nor have they shown that any witness has been hostile, recalcitrant or evasive in any proceeding connected with this action. The district court merely speculates that since the Coroner's inquest and depositions were completed several years ago, the *possibility* exists that the passage of time may have dimmed the recall of the witnesses. Bald assertions cannot replace the specific and detailed averments of fact sadly lacking in this case. In any event, the record discloses that the only discovery sought by plaintiffs between July 1976, and March 1982, was the deposition of Winston Moore taken in March 1978. Plaintiffs are therefore accountable for the majority of the passage of time which *might* result in a need to refresh the recollection of a particular witness. Because plaintiffs have not shown the inability of witnesses to recall past events upon which they might be questioned, or that Coroner's inquest and deposition testimony will be somehow inadequate to refresh recollection if necessary, they have again failed to establish a particularized need, and thus no compelling reason exists at this time to order disclosure to refresh recollection.

---

**7.** Actually, the grand jury testimony is some two years after Lucas' death.

**8.** While the district court referred to the use of grand jury testimony to refresh recollection in his third reason, *see* facts *supra,* it was his fourth reason which dealt with the issue of the passage of time and its effect on the witnesses' memory.

In this regard, however, in their December 7, 1983, motion plaintiffs state that during Robert Miller's November 15, 1983, deposition, he experienced difficulty remembering the names of jail guards which he associated with events prior to Lucas' death. He alleges that he previously identified these guards through the use of photographs shown to him during his grand jury testimony. On remand, the district court must make a determination whether or not Miller's deposition provides a basis for release of his grand jury testimony to refresh his recollection and if it so determines, it must then decide which, if any, grand jury exhibits should be released to refresh his recollection. If a specific request for the photographs is made on remand, the district court should be aware that they may: (1) be documents to which "less exacting considerations" apply with respect to disclosure, or (2) in fact not even be considered as "matter[s] occurring before the grand jury." *Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d at 1089. If the plaintiffs continue to request Miller's grand jury testimony, before any specific portion is released to refresh his recollection, the district court must first require the plaintiffs to attempt to refresh Miller's recollection through use of the photographs shown to him at the grand jury. This will insure that the grand jury testimony is not released before all other methods of refreshing recollection have been attempted and that any disclosure made for this purpose is discrete and limited. *Procter & Gamble,* 356 U.S. at 683, 78 S.Ct. at 986. Again, an *in camera* review of his testimony will be required to prevent unnecessary disclosure.

■ Finally, the plaintiffs argue that they need the grand jury materials to provide the names and testimony of certain unknown witnesses. The district court also found that a particularized need was established on this basis, stating:

"It is highly probable that these materials will contain the names and testimony of witnesses heretofore unknown to Plaintiffs and whose testimony will be material and relevant to the issues of this case. . . . "

Again, from our examination of the record, we cannot understand how the district court substantiated this finding. The plaintiffs merely allege, without setting forth any specific facts, that they have been provided information which indicates that other witnesses with information favorable to their case testified before the grand jury. Part of the reason unknown witnesses exist is obviously due to the plaintiffs' lack of both prompt and thorough discovery and adequate preparation. Even so, we also can perceive great difficulty in identifying which, if any, of the alleged seventy-five prisoners present in Ward 1 of the Cook County Jail were in fact witnesses to the events surrounding Lucas' death. However, a broad disclosure request seeking all grand jury materials is never the proper method to determine if any such unknown witnesses do in fact exist. "[T]hat objective surely could have been achieved by an order disclosing the names and addresses of the witnesses rather than the full transcripts which were ordered to be divulged." *United States v. Sobotka,* 623 F.2d 764, 768 (2d Cir.1980). Grand jury testimony is not a substitute for proper discovery and should not be used as a panacea for improper, inadequate and untimely discovery.[9]

Determining whether plaintiffs have met the particularized need standard enunciated in *Douglas Oil* next requires us to balance the foregoing reasons which plaintiffs assert compel disclosure against "the need for continued secrecy." 441 U.S. at 222, 99 S.Ct. at 1674. The district court found "that any specific need for secrecy has long since passed. . . . " This finding is contrary to the relevant case law. Plaintiffs point out that in *State of Illinois v. Sarbaugh,* our court stated that "[o]nce a grand jury has

---

**9.** If the district court, upon remand, is presented with a specific request from the plaintiffs for disclosure of the names and addresses of the unknown eyewitnesses to Lucas' death, it may in its discretion order this limited disclosure if it makes a finding that the requirements set forth in this opinion are met.

completed its work, indictments having been brought, the reasons for secrecy become less compelling." 552 F.2d at 775. However, the case now before us differs in that *no* indictments were returned. "[B]y preserving the secrecy of the [grand jury] proceedings we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. at 219, 99 S.Ct. at 1673. "A glaring injustice could be inflicted and irreparable injury caused to the reputation of a person if it were to become known that there is or ever was before the grand jury any proceeding concerning him even if he were not subsequently indicted." *In Re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d at 33 (footnote omitted). Here, since the grand jury exonerated those defendants who were called before it, all the more reason exists to maintain the secrecy of the grand jury so that these defendants' reputation and privacy is not needlessly invaded.[10] They may have been called before the grand jury on the basis of hearsay. "Grand Jury secrecy ... is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *United States v. Sells Engineering, Inc.,* 103 S.Ct. at 3138 (*quoting United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)).

In his affidavit, plaintiffs' counsel cavalierly states that "[n]o particular reason exists for maintaining the secrecy of these Grand Jury minutes from Plaintiffs' counsel (or probably anyone else)." This fails to take into consideration

> "the possible effect [of disclosure] upon the functioning of future grand juries. Persons called upon to testify will con-

sider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties."

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. at 222, 99 S.Ct. at 1674. *See also In re Special February, 1975 Grand Jury,* 662 F.2d at 1236 (wholesale disclosure might discourage "untrammeled disclosures by persons having information with respect to the commission of crimes"); *United States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir.1954). As other courts have held, due to the dangers created by unwarranted disclosure to the safety and reputations of both grand jury witnesses and those under investigation, and indeed to the continued viability of the grand jury as an investigative tool, we do not believe that the mere passage of time has significantly diminished the need for preserving the secrecy of the grand jury testimony. This is especially true in this case since a significant portion of that passage of time has been due to the lethargic discovery practices of plaintiffs. Plaintiffs should not be allowed to benefit from their own inactivity.[11] *See Baker v. United States Steel Corporation,* 492 F.2d 1074, 1079 (2d Cir.1974). "[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co.,* 441 U.S. at 223, 99 S.Ct. at 1675 (footnote omitted). "Moreover, 'the grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow.'" *Matter of Grand Jury Proceedings, Miller Brewing*

---

**10.** *See also United States v. Dorfman,* 690 F.2d 1230 (7th Cir.1982) where this court, when faced with a somewhat analogous request for disclosure of evidence obtained through wiretaps, noted that Congress, when enacting the Omnibus Crime Control and Safe Streets Act of 1968 did not authorize disclosure of wiretap evidence not made public through legal proceedings without "the consent of the people whose phone conversations were intercepted." *Id.* at 1234.

**11.** While plaintiffs' counsel argue that these delays should not be imputed to them since they only joined the case in late 1981, the record indicates that one of plaintiffs' original counsel is still a counsel of record. New counsel undertaking representation accept all prior problems connected with the case.

Co., 687 F.2d at 1090 n. 14 (quoting *Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. at 986).[12] We will not condone the release of grand jury materials to provide a "quick fix" for a case where there was improper discovery. Based upon the record, we hold that the need for the continued secrecy of the grand jury investigation of George Lucas' death warrants an absolute and unqualified nondisclosure policy at this time.

C. Whether the Request was Structured to Cover Only Material Needed.

Finally, we must consider "the extent to which the request was limited to that material directly pertinent to the need for disclosure." *Douglas Oil Co.,* 441 U.S. at 224, 99 S.Ct. at 1675. While we have already held that plaintiffs have not shown any particularized need, it is more than readily apparent from our analysis of plaintiffs' perceived need for disclosure that their request was likewise clearly not "limited to that material directly pertinent" to their needs. Plaintiffs made *no* attempt to limit their request as they merely sought wholesale disclosure of *all* grand jury materials and then attempted to justify their needs. The "'indispensable secrecy of grand jury proceedings,' ... must not be broken except where there is a compelling necessity." *Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. at 986 (*quoting United States v. Johnson,* 319 U.S. at 513, 63 S.Ct. at 1238). When compelling necessity warrants breaking this secrecy, "the showing of need for [grand jury] transcripts [must] be made '*with particularity*' so that 'the secrecy of the proceedings [may] be lifted discretely and limitedly.'" *Douglas Oil Co.,* 441 U.S. at 221, 99 S.Ct. at 1674 (*quoting United States v. Procter & Gamble Co.,* 356 U.S. at 683, 78 S.Ct. at 986) (emphasis added). *See also*

*Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1090 n. 12 (7th Cir.1982). Particularity of materials sought is wholly lacking from plaintiffs' request.

### V.

We hold that the plaintiffs have failed to demonstrate a particularized need for disclosure of the grand jury materials and that the district court abused its discretion in ordering disclosure. The district court found a particularized need based upon a finding that: (1) "[i]t is highly probable that these materials" will disclose unknown witnesses "whose testimony will be material and relevant"; (2) certain witnesses "may be unavailable"; (3) the testimony may be useful in testing credibility at trial; and (4) the grand jury testimony will be "substantially less affected by loss of memory." However, upon a review of the record we simply find no basis to support these findings. "[A] much more particularized, more discrete showing of need is necessary.... The court made no such particularized finding of need in [the] case of any one witness." *Procter & Gamble,* 356 U.S. at 683, 78 S.Ct. at 986. Likewise we hold that plaintiffs have not made a threshold "showing of such exceptional and particularized need" necessary to warrant disclosure. *Id.* at 685, 78 S.Ct. at 988 (Whittaker, J., concurring). The plaintiffs have not demonstrated, as required by *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674, that

> "the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."

12. The court entered a protective order to avoid unwarranted breaches of secrecy. That order provided "that access to said [grand jury] minutes and exhibits shall be restricted to Plaintiffs' counsel and ... shall not be made available directly or indirectly to any other person or persons, nor may they be used publicly or in public proceedings without further and specific order of this court." We note that this order does not cure the district court's error in granting wholesale disclosure in the first in-

stance. Further, we also note that the Supreme Court has recognized that there may be a greater risk of unauthorized disclosure if grand jury materials are provided to private parties as opposed to government attorneys. *United States v. Sells Engineering, Inc.,* 103 S.Ct. at 3149. See also *Matter of Grand Jury Proceedings, Miller Brewing Co.,* 717 F.2d 1136, 1138 (7th Cir.1983), *modifying on rehearing,* 687 F.2d 1079 (7th Cir.1982).

Therefore, their affidavits and arguments do not merit disclosure viewed either individually or as a whole.

In so holding we reaffirm the long-standing respect of all courts for the secrecy of the grand jury. "Both Congress and [the Supreme Court] have consistently stood ready to defend it against unwarranted intrusion. In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized." *United States v. Sells Engineering, Inc.,* 103 S.Ct. at 3138. *See also Illinois v. Abbott & Associates,* 103 S.Ct. at 1364. We do not take lightly our duty to protect the ultimate secrecy surrounding all grand jury proceedings. Plaintiffs argue that previous Supreme Court cases have recognized a trend towards disclosure. We disagree. The Supreme Court's recent opinion in *Sells Engineering, supra,* requiring government agencies seeking grand jury materials for use in civil matters to make a strong showing of particularized need, can only be read as a reaffirmance of the Court's respect for secrecy in grand jury proceedings. Any disclosure must be limited and discrete. Plaintiffs have not demonstrated that they have conducted prompt, thorough and exhaustive discovery before seeking the materials protected by grand jury secrecy. "[N]o showing has been made that the usual channels of discovery have proved fruitless or that they have been diligently pursued." *Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d at 1092 n. 17. *Cf. E.E.O.C. v. University of Notre Dame du Lac,* 715 F.2d 331, 338 (7th Cir.1983) (Before qualified academic privilege is broached parties "must conduct thorough and exhaustive discovery to exploit each and every possible source of information.").

On remand, should plaintiffs show particularized need, the district court, as we have previously stated, will be required to view some of the grand jury materials *in camera* before making a determination of whether or not disclosure is warranted for specific materials. *See Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d at 1096 n. 24; *In re Container Antitrust Litigation,* 687 F.2d at 55. *Cf. Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150 at —– -–— (7th Cir.1984) (*in camera* examination of membership files may be appropriate before district court rules on discovery order). *But see, State of Illinois v. Sarbaugh,* 552 F.2d at 768. While we recognize the workload district court judges are faced with, this *in camera* procedure is necessary due to the paramount concern of all courts for the sanctity and secrecy of grand jury proceedings. In undertaking this inquiry the district court should not determine what is useful to the litigants but rather should focus on the question of whether particularized need has been shown for each item to be released. *See Dennis,* 384 U.S. at 874–75, 86 S.Ct. at 1851–52. Indiscriminate lifting of the veil of secrecy from the grand jury will forever destroy the effectiveness of the grand jury as an investigative body by not allowing it "to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution." *United States v. Sells Engineering, Inc.,* 103 S.Ct. at 3138. Therefore, we will lift that veil only in very compelling and limited circumstances. Those circumstances are not present here.

For the reasons stated herein we reverse the decision of the district court and remand for proceedings not inconsistent with this opinion.[13]

---

13. Because of our holding that no particularized need has been established it is unnecessary to address the question raised by the State's Attorney of whether or not the district court must reconcile its decision with that of the state court.