**PONTARELLI LIMOUSINE, INC., et al., Plaintiffs,**

**v.**

**The CITY OF CHICAGO, etc., et al., Defendants.**

**No. 83 C 6716.**

United States District Court,
N.D. Illinois, E.D.

Feb. 5, 1987.

Charles Pressman, Bertrand A. Rice, Charles Pressman, P.C., Chicago, Ill., for plaintiffs.

Dan Brusslan, Morris G. Dyner, Paul D. Streicher, Joel Miller, Fischel & Kahn, Ltd., Chicago, Ill., Robert W. Fioretti, Thomas Kapsalis, James Montgomery, City of Chicago Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BRIAN BARNETT DUFF, District Judge.

This action arises out of the livery business conducted by plaintiffs and some of the defendants at O'Hare International Airport. Before the court is the United States' motion to quash the subpoenas served on Anton Valukas, U.S. Attorney for the Northern District of Illinois, and Michael Wilson, F.B.I. Acting Special Agent-in-Charge.

## FACTS

Plaintiffs ("Chicago Liveries") are individuals or corporations engaged in the livery business in the City of Chicago. The "City Defendants" are the City of Chicago; Thomas Kapsalis, in his official capacity as Commissioner of Aviation of the City of Chicago; and Patrick Dunne, in his capacity as predecessor Commissioner of Aviation. The remaining defendants are individual livery companies ("Suburban Liveries") and the Northern Illinois Livery Owners Association ("Northern"), a trade association comprised of livery companies.[1]

The complaint alleges that the City Defendants conspired with the Suburban Liveries to exclude plaintiffs from the O'Hare walk-up market for incoming passengers by assigning certain rent-free booths inside the terminal to the Suburban Liveries. The complaint alleges further that defendant Northern acted as an agent for the Suburban Liveries in connection with this conspiracy. Claims are brought under 42 U.S.C. § 1983 and sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

During discovery, plaintiffs learned that Leroy O'Shield, Deputy Commissioner for Security and Safety in the City's Aviation Department and chief of security at O'Hare International Airport, may have been offered or given at least one bribe by certain of the Suburban Liveries. Plaintiffs learned further that O'Shield might have tape recordings of the alleged bribe or bribes. Thus, when U.S. Attorney Valukas and Agent Wilson were served with deposition subpoenas, they were required to bring:

1. All tapes of conversations to which Leroy O'Shield was a party or which he taped or transmitted in 1985 and 1986, referring or relating to liveries,

---

1. In their second amended complaint, plaintiffs named as defendants three other livery businesses and one other trade association. These parties have been served, but have not appeared in this action. See Joint Status Report of November 19, 1985. Plaintiffs have not sought default judgments against these defendants.

livery booths and livery operations at O'Hare;

2. All transcripts thereof;

3. All money received by Leroy O'Shield from 1985 to 1986 in connection with liveries, livery booths, and livery operations at O'Hare;

4. All statements by Leroy O'Shield and other persons in 1985 or 1986 referring or relating to liveries, livery booths and livery operations at O'Hare.

## DISCUSSION

Plaintiffs assert that they are not seeking grand jury transcripts, documents prepared for the grand jury, or bribe money that was subsequently given to the grand jury. Criminal Rule 1.04(e) of the United States District Court, Northern District of Illinois, therefore is inapplicable [2] and this court will proceed to examine the merits of plaintiffs' motion. We will examine whether the materials sought should be protected under either Fed.R.Crim.P. 6(e) or under the United States' evidentiary law enforcement privilege, or whether they should be released under 18 U.S.C. § 2517. We will then determine the appropriate timing of the enforcement of this order.

1. *Federal Rule of Criminal Procedure 6(e).*

■ Rule 6(e)(2) imposes a general rule of secrecy on grand jury proceedings. By its terms, it applies only to "matters occurring before the grand jury." Matters occurring before the grand jury constitute any items that are sufficiently "grand jury related," such as documents which are akin to grand jury testimony. *See In Re Special February, 1975 Grand Jury [Baggot],* 662 F.2d 1232, 1237–38 (7th Cir.1981), *aff'd,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1982) (witness' prepared statement to be read to grand jury, and attorney's memorandum to file on which statement was

based, held to be within the scope of Fed.R. Crim.P. 6(e)(2)).

■ In the instant case, the matters sought by the plaintiffs are not so related to the grand jury proceedings that they require protection from disclosure. They are not grand jury transcripts, nor does it appear that they have been recited verbatim, or substantially verbatim, to the grand jury. Furthermore, the U.S. Attorney has not shown us that there are documents like those held protected in *Baggot* which might be subject to plaintiffs' request. This court therefore finds that the materials requested are not "matters occurring before a grand jury" within the meaning of Rule 6(e)(2).

Further support for this holding comes from *In Re Grand Jury Matter [Catania],* 682 F.2d 61, 64–65 (3d Cir.1982). In that case, the court held that products of an FBI investigation, such as tape recordings and transcripts of consensually monitored conversations, were not matters occurring before a grand jury. The court reasoned that the information obtained was generated apart from the grand jury process, even thought it might ultimately be used there. We find the facts in *Catania* to be substantially identical to those in the instant case and its reasoning to be in harmony with the case law in our own circuit (*see infra*), so we adopt the same result here.

■ Even assuming the items sought are matters occurring before the grand jury, they must be released to plaintiffs for two reasons. First, plaintiffs seek these documents and tangible things in order to learn the information contained therein, not to discover what occurred before the grand jury. In such cases, the documents may be disclosed so long as the secrecy of the grand jury deliberations is not seriously compromised. *See Matter of March 1981 Grand Jury [Almond Pharmacy],* 753 F.2d 575, 578 (7th Cir.1985). We do not see

---

**2.** Rule 1.04(e) provides:
> [A]ll records maintained by the Clerk of the Court which relate to grand juries including grand jury subpoenas, transcripts of testimony before any grand jury, the Clerk's docket of grand jury proceedings, motions and orders relating to grand jury subpoenas, true bills, and no bills shall be suppressed and released only on the order of the Chief Judge or Acting Chief Judge of this Court.

how such "serious compromise" could occur, since plaintiffs request documents only. Numerous courts have held that a request for documents evokes different concerns than a request for transcripts. *See, e.g., id.* at 579; *Lucas v. Turner,* 725 F.2d 1095, 1101 (7th Cir.1984).

Second, the items sought must be disclosed because plaintiffs have shown a particularized need for them. This particularized need is met when it is demonstrated:

that the material [sought] is needed to avoid a possible injustice in another judicial proceeding; that the need for disclosure is greater than the need for continued secrecy; and that their request is structured to cover only material so needed.

*Lucas v. Turner, id.,* quoting *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1978).

In this case, there is substantial evidence that an injustice would result if the requested materials are not released. As O'Shield stated many times in his deposition, he needs the tapes to refresh his memory, *see* O'Shield dep at 59, 64, and 68, and the United States does not claim that the same information could be obtained from another source. Other courts have found that a particularized need arises when a litigant seeks to use matters occurring before the grand jury to refresh a witness' recollection. *See Douglas Oil Co. v. Petrol Stops Northwest, supra* at 222 n. 12, 99 S.Ct. at 1674 n. 12; *State of Ill. v. F.E. Moran, Inc.,* 740 F.2d 533, 540–41 (7th Cir.1984).

This court also finds that the plaintiffs' need for disclosure is greater than the United States of America's need for continued secrecy. Plaintiffs seek merely documents and tangible things that were obtained by Mr. O'Shield. There is no indication in either party's briefs that those materials have been subpoenaed by or will be presented to the grand jury. In addition, because the materials sought are documents rather than grand jury transcripts, the concerns about grand jury secrecy are somewhat lessened, even though both doc-uments and transcripts are subject to Fed. R.Crim.P. 6(e). *See Lucas v. Turner, supra* at 1101–02; *Matter of Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1089–90 (7th Cir.1982).

■ Finally, plaintiffs' request for materials, on the whole, is not excessive. We have not, however, been shown why the actual money received by O'Shield would refresh his recollection in a way that the tapes, transcripts, and statements would not. We therefore deny disclosure of the materials sought in the third category of plaintiffs' request.

## 2. *Law Enforcement Evidentiary Privilege.*

■ The United States also has failed to show that it is entitled to invoke its evidentiary law enforcement privilege in order to protect the requested items from disclosure. To assert the privilege,

the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege.

*United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981).

Even assuming that the United States has lodged a formal claim of privilege, and that the information for which protection is sought is specified with particularity, the United States still has not satisfied the other two requirements of the rule. *United States v. Winner, id.,* and *Black v. Sheraton Corp. of America,* 564 F.2d 531 (D.C.Cir.1977), hold that the responsible official, in this case the U.S. Attorney, must submit an affidavit stating that he has personally inspected the requested items and believes that they fall within the privilege. The U.S. Attorney has not submitted any such affidavit in this case. In addition, it should be noted that plaintiffs request four categories of materials. The United States, far from explaining how each category contains privileged matters, merely claims protection as to them all without

distinction. It therefore cannot be said to have explained why each type of information falls within the scope of the privilege.

3. *18 U.S.C. § 2517(3)*.

Section 2517(3) permits the disclosure of information acquired by means of a wiretap. It was not intended, however, to create a right of public access. *United States v. Dorfman*, 690 F.2d 1230, 1232–33 (7th Cir.1982). Plaintiffs have not demonstrated that § 2517(3) is applicable, nor have they argued that it overrides Fed.R.Crim.P. 6(e). We therefore decline to address the litigants' arguments regarding § 2517(3) at this time.

4. *Timing of Enforcement of Subpoenas*.

■ Everything this court has said so far addresses the question of whether the materials sought should be discoverable, rather than when they should be discoverable. Our research indicates that while the decision to issue an indictment is being debated, the policy reasons for grand jury secrecy apply with particular emphasis. *In Re Grand Jury Proceedings*, 613 F.2d 501, 505–06 (5th Cir.1980); 1 Wright, *Federal Practice and Procedure: Criminal 2d* § 106 at 244–45 (1982). Those policy reasons include (1) encouraging prospective witnesses to come forward voluntarily (since witnesses might not volunteer if they knew that those against whom they were testifying would be aware of that testimony); (2) protecting those witnesses against inducement or retribution; (3) decreasing the risk that those about to be indicted would flee; and (4) preserving the dignity of those who are accused but exonerated. *United States v. Sells Engineering*, 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1982) (quoting *Douglas Oil, supra*, 441 U.S. at 218–19, 99 S.Ct. at 1672).

In the instant case, the grand jury is still in session, so all of these policy reasons apply with full force. Moreover, proceedings in the criminal case may change the parties' needs considerably in the months ahead, and there is no particular reason to expedite discovery in the civil case. Recognizing that our decision "necessarily is infused with substantial discretion," *State of*

*Illinois, supra* at 541 (Cudahy, J., dissenting) (quoting *Douglas Oil, supra*, 441 U.S. at 223, 99 S.Ct. at 1675), we therefore have decided to stay the execution of our order at least until the grand jury proceedings have terminated.

Once the grand jury has finished its business, plaintiffs may bring a motion to lift the stay on this order. We wish to emphasize, however, that if such a motion is brought, we will not order disclosure automatically, but will re-examine the issue in light of the outcome of the grand jury process. Grand jury secrecy is too delicate a matter to treat lightly at any stage of this lawsuit.

## CONCLUSION

Accordingly, plaintiffs are entitled to obtain all of the materials requested in the first, second, and fourth categories. The materials in the third category will not be disclosed. The enforcement of this order will be stayed at least until the grand jury proceedings have terminated.

IT IS SO ORDERED.