**Sara STUMP and Andrew
M. Ocrant, Plaintiffs,**

v.

**Daryl G. GATES, et al., Defendants.**

**No. 91–C–509.**

United States District Court,
D. Colorado.

Oct. 8, 1991.

Nunc Pro Tunc Sept. 25, 1991.

Phillip Lowery, Denver, Colo., for plaintiffs.

Daniel R. Satriana, Jr., Denver, Colo., Jane B. Garrow, Englewood, Colo., Lawrence D. Stone, Denver, Colo., for Gates, Sexton, Kohnke, Barnard and the City of Greenwood Village.

John McKendree, Denver, Colo., for Sueann Ocrant.

L. Cary Unkelbach, Littleton, Colo., for Gould.

## MEMORANDUM OPINION
## AND ORDER

CARRIGAN, District Judge.

Plaintiffs Sara Stump and Andrew Ocrant commenced this action asserting claims under 42 U.S.C. § 1983 and state tort law. Defendants are: (1) Sueann Ocrant; (2) the Arapahoe County Coroner's Office, and Dr. Jill Gould in her official capacity as Arapahoe County Coroner (collectively "Arapahoe County"); and (3) the City of Greenwood Village, Rollin Barnard in his official capacity as that city's mayor, the Greenwood Village Police Department, Daryl Gates individually and in his official capacity as the police department's former chief, William Kohnke in his official capacity as the police department's current chief, and Diane Sexton individually and in her official capacity as a Greenwood Village Police Department detective (collectively "Greenwood").

Currently pending are the plaintiffs' motions: (1) for release of the 1989 Arapahoe County statutory grand jury report concerning Lawrence Ocrant's death; and (2) for release of James L. Clement from his oath to keep secret the grand jury investigation. Also pending is the defendants Gates' and Sexton's motion, filed August 28, 1991, for release of grand jury transcripts and exhibits that previously have been released by the state court to the City of Greenwood Village.

The parties have fully briefed the issues and oral argument was heard on August 9, 1991. At that hearing, I took under advisement the issue of releasing grand jury materials, and orally ordered Clement released from his secrecy oath. This memorandum opinion explicates the basis for the latter ruling, analyzes the other issues presented and disposes of the three motions pending. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331 and 1343 and this court's pendent jurisdiction.

### I. Facts and Procedural History.

On May 20, 1984, Lawrence Ocrant was found dead in bed at his home. He had been shot in the head. After an investigation, the Greenwood Village police department determined that his death was a suicide.

In 1988, James L. Clement, then chief investigator for the Denver District Attorney's Office, conducted a special investigation of the Greenwood Village police department's investigation into the death. In 1989, an Arapahoe County statutory grand jury conducted an inquiry into the police department's handling of that investigation. Clement testified at the grand jury proceedings and heard other witnesses' testimony. The grand jury did not issue an indictment arising out of Ocrant's death nor make public its final report on the matter.

On January 17, 1990, the plaintiffs filed in the state district court for Arapahoe County, Colorado, a motion for release of the grand jury report. On June 14, 1990, Chief Judge Joyce Steinhardt of that court ordered disclosed to the plaintiffs the one-line conclusion of the grand jury report that Lawrence Ocrant's death had been a homicide. (See plaintiffs' brief, Ex. A). At that time, Judge Steinhardt determined that the plaintiffs did not have a "particularized need" for the remainder of the report, and therefore she did not order its disclosure. Id. She stated that if the plaintiffs commenced a civil action, the trial judge in that action should determine whether to release the grand jury report. See id.

On June 26, 1990, the plaintiffs filed in Chief Judge Steinhardt's court an amended motion for release of the grand jury report, exhibits and transcripts. On July 31, 1990, she allowed the plaintiffs and the Greenwood Village Police Department access to the exhibits and testimony transcripts. (See plaintiffs' brief, Ex. B). However, she again refused to order disclosure of any further contents of the grand jury report, stating that:

"Since the transcripts and exhibits will be released to the Petitioners and to the Defendants in the pending lawsuit, the conclusions of the Grand Jury contained in the report may not be relevant.

Therefore, the Court will not release the 1989 Arapahoe County Statutory Grand Jury report at this time. After the trial commences, if the trial judge determines that the Grand Jury report has information which is relevant to the prosecution or defense of the matter, the trial judge may make a determination as to whether the report should be released." *Id.* at pp. 4–6.

Plaintiffs commenced this action on March 29, 1991. They filed the instant motions on May 10, 1991. Also on that date, Arapahoe County filed a motion in Judge Steinhardt's court seeking release of the grand jury report, transcripts and exhibits. On May 13, 1991, the plaintiffs again moved in that court for release of transcripts and exhibits allegedly not previously released.

Judge Steinhardt in an order issued June 26, 1991, denied both the plaintiffs' motion and Arapahoe County's motion, stating:

"[t]he Court will not release the 1989 Arapahoe County Statutory Grand Jury report at this time. After the trial commences, if the trial judge determines that the Grand Jury report has information which is relevant to the Prosecution or the Defendants in this matter, the trial judge may make the determination as to whether the report shall be released."

This Court finds that it is appropriate that the trial judge make the decision as to whether the 1989 Arapahoe County Statutory Grand Jury report is relevant and should be released to any or all of the parties.

The Court will be happy to release the Grand Jury report to the federal judge presiding over this matter." (*See* exhibit to the plaintiffs' supplemental brief).

## II. Analysis.

I address, in order, (1) the plaintiffs' motion for release of the grand jury report, (2) Gates' and Sexton's motion for access to previously released grand jury materials, and (3) the plaintiffs' motion seeking Clement's release from his secrecy oath.

### A. Release of the Grand Jury Report.

Plaintiffs assert: (1) that pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i), this court has authority to order the release of the state grand jury report;[1] (2) that a particular procedure, allegedly mandated under controlling case law, must be used to assess whether the report should be released; and (3) that their "particularized need" for the report to prepare and prosecute this action overcomes the requirement that grand jury reports remain secret.

Greenwood argues: (1) that this court lacks jurisdiction to order the grand jury report released (*see infra* n. 6); (2) that, assuming jurisdiction exists, the court should not order release of the report; and (3) that the instant motions should not be addressed until the defendants' motions to dismiss have been decided.[2] Defendants

---

1. Plaintiffs originally argued that the report's release was proper under Colo.Rev.Stat. § 16–5–205(4) which provides that:

"The report of the grand jury shall not be made public except when required by statute or except that all of the report or a portion thereof may be released if the chief judge of the district court finds such a release will exonerate a person or persons who have requested such a release. A bill which is found not to be a 'true bill' shall not be construed to be a report under this subsection (4) and may be released upon consent of the person exonerated and the chief judge."

The statute is inapplicable here. First, the defendants assert, and the plaintiffs appear to concede, that no Colorado statute requires release of the grand jury report.

Second, because the finding that a report's release will exonerate someone must be made by the *chief judge of a state district court*, § 16–

5–205(4) is inapplicable to a motion in this court.

Finally, a "true bill" is not a grand jury report, but a separate document indicating that an indictment will issue. The fact that the instant grand jury did not find a true bill provides no basis for releasing the grand jury report, but allows only the bill's release. Moreover, consent of the Chief Judge and "exonerated person" is absent.

2. Defendants' argument that this court cannot rule on the instant motions until deciding their motions to dismiss on qualified immunity grounds is unavailing. While it is true that under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), immunity issues should be decided before government defendants become subject to "the burdens of broad reaching discovery," no discovery burden would be imposed on the defendants by an

Arapahoe County and Sueann Ocrant mimic Greenwood's arguments.

The instant motion and responses thus raise the following issues: First, pursuant to which federal rules does this court have authority to order the release of state grand jury materials; second, what procedure should be used when a federal court considers a motion for release of state grand jury materials; and, finally, have the plaintiffs shown a particularized need for the report sufficient to overcome any justification for its continued secrecy.

### 1. Basis of Federal Court Authority to Order Release of State Grand Jury Materials.

■ Plaintiffs in their original brief failed to cite any federal rule supporting their motion. In their supplemental brief, however, they have cited Fed.R.Crim.P. 6(e)(3)(C)(i) as the rule providing authority for release of the state grand jury report and file. That rule provides:

"Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made ... when so directed by a court preliminarily to or in connection with a judicial proceeding ... If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct."

By its plain language, Fed.R.Crim.P. 6 applies only to *federal* grand juries, not those convened by state courts under state law. *See also FDIC v. Ernst & Whinney,* 921 F.2d 83, 86 (6th Cir.1990). Research reveals no case where a federal court has ordered release of state grand jury materials pursuant to Fed.R.Crim.P. 6(e) and the plaintiffs have cited none.

In oral argument the plaintiffs' counsel conceded that the instant motion would more appropriately be framed as a discovery request. Rule 34(c), Fed.R.Civ.P., "does not preclude an independent action against a person not a party for production

of documents...." Moreover it is clear that, under Fed.R.Civ.P. 26(b)(1), the court may act upon its own initiative to control discovery, and may compel discovery pursuant to Fed.R.Civ.P. 37(a). Discovery motions filed under those rules properly invoke this court's inherent power to control discovery.

In the Tenth Circuit, a motion pursuant to federal discovery rules appears to be the approved procedure for seeking disclosure of state grand jury materials in federal court. In *United States ex rel. Woodard v. Tynan,* 757 F.2d 1085, *modified on rehearing,* 776 F.2d 250 (10th Cir.1985), the Tenth Circuit addressed the question of a federal district court's authority to order release of state grand jury materials. *Tynan* involved an action under the False Claims Act [3] commenced by the Colorado Attorney General against various nursing homes. Defendant's business records had been seized pursuant to a state court order. The state court had granted the defendant's motion to suppress use of those documents in a pending criminal action and, treating the records as "grand jury materials," had ordered them sealed. *Tynan,* 757 F.2d at 1086–87.

In federal court, the Colorado Attorney General moved pursuant to Fed.R.Civ.P. 34 for an order compelling the defendants to consent to release of the documents. The district court denied that motion and dismissed the case. *Id.* at 1087.

In reversing, the Tenth Circuit declared:
"The normal procedure in a case like the one before us is for the plaintiffs to file a motion under Fed.R.Civ.P. 34 to require the defendants to produce the documents that plaintiffs are entitled to discover under usual procedures. If plaintiffs had filed such a discovery request in this case, the defendants would have been unable to produce the disputed documents because the Colorado court held them in its custody and was treating them as sealed grand jury materials. An alternative available in that situation

order releasing or prohibiting release of the grand jury report.

**3.** 31 U.S.C. §§ 3729–3731.

would have been, upon plaintiff's request [under Fed.R.Civ.P. 34] for the federal district court to order the defendants to request permission from the state court maintaining custody of the documents to release those records so that defendants could comply with their discovery obligations in the federal civil proceeding. Such an order would be within the power of a federal district court. *See, e.g., Karlsson v. Wolfson,* 18 F.R.D. 474 (D.Minn.1956).... Another judicially acceptable procedure, which we consider less desirable, is for the party seeking the documents related to a grand jury investigation to apply directly to the court with custody of the documents." *Id.* at 1087 (emphasis added).

The Tenth Circuit's reading of the record further "indicate[d] that the district court did not understand that it had the power to order the release of the state court records." [4] *Id.* at 1090.

*Tynan* is obviously distinguishable from the instant case. Because the grand jury materials here sought are not the defendants' business records, no order requiring the defendants either to produce or seek production of the grand jury report is either appropriate or necessary.[5] Further, because Chief Judge Steinhardt has indicated in prior orders her willingness voluntarily to transmit the grand jury report to this court, this case does not raise the sensitive comity issue whether federal courts have authority to order state courts to disclose state grand jury records.

Nevertheless, *Tynan* stands for the proposition that a request for grand jury materials is essentially a discovery request and, therefore, normally should be inter-

posed in the form of a discovery motion under the Federal Rules of Civil Procedure. Because this court has power to hear the federal claims the plaintiffs assert, it clearly has power to order production of relevant documents. *Tynan,* 757 F.2d at 1089–90. Rule 6, Fed.R.Crim.P., however, is not the rule governing discovery of a *state* grand jury report. Because the plaintiffs at oral argument redesignated the instant motion as a discovery request under Fed. R.Civ.P. 34 and 37, I next consider it in that context.

### 2. Procedure for Analyzing Release of State Grand Jury Report.

▮ Plaintiffs cite *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 221–22, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979), as outlining the procedure and criteria for disclosing grand jury materials. *Douglas Oil* concerned a civil antitrust action commenced in Arizona federal district court. While that action was pending, the Justice Department convened, in the central district of California, a federal grand jury that indicted the Arizona civil case defendants. Upon petition to the California federal district court, those defendants obtained transcripts of grand jury testimony. *Id..*

Plaintiffs in the Arizona action sought to obtain the same federal grand jury transcripts pursuant to Fed.R.Crim.P. 6(e). After a hearing, the California federal district court ordered the grand jury transcripts released, but limited their use to impeaching witnesses or refreshing recollection at deposition or trial. *Douglas Oil,* 441 U.S. at 217, 99 S.Ct. at 1671–72. The Ninth Circuit affirmed.

**4.** On rehearing *en banc,* however, the Tenth Circuit distanced itself from its prior conclusion that a federal district court has power to order a state court to release state grand jury materials, stating that:

"Upon reflection, we believe the problems inherent in the instant case may be resolved by a course of action that does not require us to decide whether federal courts have the power to order a state court to release documents it has placed under seal. We therefore neither disavow nor affirm the prior panel opinion, 757 F.2d 1085, but choose to dispose of the

case on the basis discussed herein." *Tynan,* 776 F.2d 250, 251 (10th Cir.1985).
The Tenth Circuit thereafter went on to endorse the procedure for obtaining state grand jury materials analyzed in part II(A)(2) of this opinion.

**5.** Moreover the plaintiffs on three occasions unsuccessfully have sought release of the grand jury report in state court, and the state court has indicated it will be made available upon this court's order.

Noting that "in some situations justice may demand that discrete portions of [grand jury] transcripts be made available for use in subsequent proceedings," *id.* at 219–20, 99 S.Ct. at 1673, the United States Supreme Court stated the rule that:

"Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 222, 99 S.Ct. at 1674.

The Supreme Court approved the application of this rule by both lower courts. *Id.*

The Supreme Court reversed, however, determining that the California federal district court had abused its discretion by ordering the transcript's release. The Court indicated that requests for disclosure of grand jury materials generally should be directed to the court under whose auspices the grand jury was empaneled because that court is best suited to determine the continuing need for grand jury secrecy. *Douglas Oil*, 441 U.S. at 225, 99 S.Ct. at 1676. The court where the civil action was proceeding was the appropriate court for determining whether a "particularized need" for release of grand jury materials had been shown. *Id.* at 228–29, 99 S.Ct. at 1678.

Finding that the California federal district court had made a determination beyond its expertise, the United States Supreme Court stated the preferred procedure would be:

"for the [California federal] District Court, after making a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate, to send the requested materials to the court where the civil cases were pending. The Ari-

zona [federal district court], armed with its special knowledge of the status of the civil actions, then could have considered the requests for disclosure in light of the California court's evaluation of the need for continued grand jury secrecy. In this way, both the need for continued secrecy and the need for disclosure could have been evaluated by the courts in the best position to make the respective evaluations." *Id.* at 230–31, 99 S.Ct. at 1678–79.

Unlike this case, *Douglas Oil* concerned a federal grand jury. However, in *United States Ex rel. Woodard v. Tynan*, 757 F.2d 1085 (10th Cir.), *modified on rehearing*, 776 F.2d 250 (1985), the Tenth Circuit approved the *Douglas Oil* approach for assessing disclosure of state grand jury materials in federal proceedings. Citing extensively from *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir.1980), a case that had employed the *Douglas Oil* approach in addressing federal court disclosure of state grand jury matters, the Tenth Circuit stated that:

"We agree with the Seventh Circuit's approach. A state order cannot foreclose a federal court from access to materials if a federal district court determines that disclosure is essential in a case properly before it. *In such a case the federal district court should order the state trial court to transmit to it the materials for examination in camera and treatment in accordance with the procedures set out in Douglas Oil.*" *Tynan*, 757 F.2d at 1089–90 (emphasis added).[6]

Citing *Shell v. Wall*, 760 F.Supp. 545 (W.D.N.C.1991), however, the defendant Greenwood argues that, notwithstanding *Tynan* and *Douglas Oil*, this court *should not* order release of the grand jury report "except in the most dire of circumstances."[7] (Greenwood's supplemental brief, p. 7).

---

**6.** On rehearing, the Tenth Circuit further stated that, "without knowledge of the state court's reasons [for requiring the documents sought to remain secret] we do not understand why the [plaintiffs] should be denied access to those

documents necessary to make their civil case." *Tynan*, 757 F.2d at 252.

**7.** In its original brief, Greenwood argued that, because state statutes govern the release of state grand jury material, this court lacks jurisdiction

In *Shell*, the defendants unsuccessfully moved in a North Carolina state court for disclosure of grand jury transcripts. The state grand jury there had completed its investigation "several months" prior to that unsuccessful motion. *Id.* at 548. Defendants then moved in federal district court for an order requiring the state court to produce the transcripts. *Id.* at 546. The federal district court denied that motion for several reasons, primary among which was its reluctance to *order* the state court to produce the materials sought.[8]

*Shell* is not controlling precedent in this district, and even if it were, it is readily distinguishable. The defendants' motion in *Shell* sought a federal court *order* requiring the state court to disclose grand jury materials. The federal court's primary reason for denying the motion was its belief that such an order would be "deeply offensive to the notion of federalism." *Id.* at 546. As noted, no such comity issue is involved here. Moreover, the plaintiffs have now properly framed their request for grand jury materials under appropriate federal rules governing civil procedure.

I conclude that the procedure outlined in *Douglas Oil* and adopted by the Tenth Circuit in *Tynan* is appropriate here. Accordingly, pursuant to this court's request Chief Judge Steinhardt voluntarily transmitted the grand jury report to this court for *in camera* review.

The issue remaining for this court's decision, to which I now turn, is whether the plaintiffs have demonstrated a particularized need for the grand jury report and other materials sufficient to overcome the need for continued secrecy.

### 3. Particularized Need.

■ A party seeking disclosure of grand jury materials must demonstrate a particularized need for them. *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674. More specifically, the party must show: (1) that the material sought is needed to avoid a possible injustice in another judicial proceeding; (2) that the need for disclosure outweighs the need for continued secrecy; and (3) that the request is structured to cover only the materials needed. *Id.; Tynan*, 757 F.2d at 1088; *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir.1984); *Grubisic*, 619 F.2d at 644; *Shell*, 760 F.Supp. at 547.

■ A federal judge asked to determine whether grand jury materials should be released "necessarily is infused with substantial discretion." *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675. An order releasing grand jury materials will not be reversed absent a clear showing of error. *In re Grand Jury Proceedings*, 800 F.2d 1293, 1299 (4th Cir.1986). The test to be utilized by the district court is flexible—

---

to order the report's release. In light of their argument in additional briefing that this court *should not* order the report's release, it is unclear whether they still assert that argument.

Nevertheless, *Tynan* disposes of Greenwood's jurisdictional argument. The Tenth Circuit there clearly stated that it is within a federal district court's province to determine whether disclosure of state grand jury materials is essential to a case properly before it. *Tynan*, 757 F.2d at 1090. While *Tynan* leaves somewhat unclear whether a federal court has power to order a state court to disclose state grand jury materials, this court's power to enforce discovery of those materials sought by invoking the *Douglas Oil* procedure seem clear where, as here, the state court has invited and indicated its acquiescence in such discovery.

**8.** The *Shell* opinion stated: "As an initial matter, the Court believes that Defendants' motion is procedurally flawed. Defendants have basically requested that this Court act as a state appeals

court and reverse an order by the North Carolina Superior Court. The Court finds the intrusion into what is a statutorily defined part of the state court ... to be deeply offensive to the notion of federalism, and one that should be avoided if at all possible....

Prior to engaging in such an extreme method of gaining what is essentially a discovery request, Defendants should have utilized the normal discovery process.... Defendants failed to depose any person and to request the materials through a subpoena duces tecum. *See* Rule 45(b) of the Federal Rules of Civil Procedure. Therefore, the Court believes that Defendants' motion should be denied because Defendants failed to comply with the normal discovery procedures prior to requesting that the Court issue the extraordinary order sought." *Id.* at 546–47. The *Shell* court further determined that, even had the appropriate discovery procedures been followed, the defendants had failed to meet the *Douglas Oil* test's particularized need requirement. *Id.* at 547–49.

weighing the public interest served by disclosure against the need for continued secrecy. *Id.* This standard is adaptable to different circumstances and sensitive to the fact that the requirements of secrecy vary with different fact situations. *Id.*

### a. First Requirement: Avoiding Possible Injustice.

Plaintiffs must establish that not disclosing the report may result in a possible injustice in the civil action now before this court. In *Lucas*, 725 F.2d at 1102–03 (7th Cir.1984), a federal court § 1983 action in which state grand jury materials were sought, the court stated that:

"Plaintiffs have failed to demonstrate, either in their counsel's affidavit, or in their briefs to this court, that the grand jury materials contain information which is *absolutely necessary, rather than simply beneficial to their § 1983 action and that the information therein could not have been obtained through normal discovery channels....* [Further] while unequal access [to grand jury materials] is a factor worthy of consideration, the record [does not demonstrate unequal access]." *Id.* at 1102.

Similarly, the *Shell* court determined that possible injustice had not been shown because it was not clear that the movants there could not obtain, through normal discovery procedures, the substantial equivalent of the grand jury materials sought. *Shell*, 760 F.Supp. at 548.

■ Thus the test for "possible injustice" is that the materials sought must be necessary and not obtainable through normal discovery. Clearly the grand jury report, or its equivalent, is unavailable to the plaintiffs through any discovery procedure except that here invoked. In this court a party is entitled to discovery of any matter, not privileged, that is relevant to the action, even if inadmissible at trial, so long as it appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R.Civ.P. 26(b)(1). After carefully reviewing the grand jury report *in camera*, I conclude that injustice may result if disclosure is not allowed.

### b. Second Requirement: Balancing Test.

■ The most critical aspect of the *Douglas Oil* test is balancing the need for secrecy against the plaintiffs' need for the grand jury report. Federal common law determines the scope of any privilege attaching to state grand jury materials sought in a federal action. *Tynan*, 757 F.2d at 1089–90 (10th Cir.); *Grubisic*, 619 F.2d at 644 (7th Cir.). In that regard, the *Grubisic* court stated that:

"the requirement that these plaintiffs first seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in this federal civil rights case.... [O]nly the federal court may determine whether the materials are privileged under federal common law. In this way the federal interest in disclosure will be properly considered preliminarily to a final decision on the privilege issue." *Id.* at 644.

■ In determining the need for secrecy, the Tenth Circuit in *Tynan* stated that a federal court considering a request for state grand jury materials should apply Fed.R.Crim.P. 6(e)'s principles by analogy. *Tynan*, 757 F.2d at 1090 (*citing Lucas*, 725 F.2d 1095 (7th Cir.1984)). The court then identified "several distinct interests" served by preserving grand jury secrecy:

"First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.* at 1090 (*citing*

*Douglas Oil,* 441 U.S. at 219 and n. 10, 99 S.Ct. at 1672–73 and n. 10).

In addition to the above factors, a federal court must consider not only the immediate effects on the grand jury system if disclosure is allowed, but also the possible effect upon the functioning of future grand juries. *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674.

■ The public interest in maintaining grand jury secrecy, however, is substantially diminished once the grand jury has completed its investigation, although that interest may not be eliminated completely. *See Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674; *United States v. Colonial Chevrolet Corp.,* 629 F.2d 943, 949 (4th Cir.1980), *cert. denied sub nom., Certain Unindicted Individuals & Corps. v. United States,* 450 U.S. 913, 101 S.Ct. 1352, 67 L.Ed.2d 337 (1981). The most common reason for permitting disclosure is said to be that the grand jury already has completed its term. *See In re Grand Jury Proceedings,* 800 F.2d 1293, 1300 (4th Cir.1986). Here, of course, that reason is present.

Courts have considered several "particularized need" factors, including: (1) whether the grand jury materials will disclose the identity of unknown witnesses whose testimony could be material and relevant, *Lucas,* 725 F.2d at 1108; (2) whether the testimony of witnesses now unavailable may be preserved in grand jury materials, *id.;* (3) whether the grand jury materials may effectively be used for impeachment purposes at trial, *id.; see also Shell,* 760 F.Supp. at 548; and (4) whether the materials could be used to refresh witnesses' recollections at trial, *Lucas,* 725 F.2d at 1105.

■ The grand jury here involved completed its investigation more than two years ago without returning a criminal indictment. That passage of time has virtually eliminated the public interest in further maintaining grand jury secrecy and, in large part, has rendered moot the interests favoring secrecy; witnesses already have voluntarily come forward to testify, and disclosure of materials now does not raise the specter of retribution for their testimony. Because no indictment was returned by the grand jury here involved, the risk of a defendant's flight or attempt to influence grand jurors' votes is non-existent. The grand jury accused no one of killing Lawrence Ocrant and exonerated no one; accordingly protecting from public scorn persons who may have been targeted as murder suspects by the grand jury investigation is not an issue.

Consideration of possible present and future effects disclosure might wreak upon the grand jury system likewise produces no support for continued secrecy. The procedure here invoked, including this court's detailed *in camera* review of all grand jury materials and redaction of information not relevant or likely to lead to admissible evidence, adequately protects against dissemination of matters implicating secrecy concerns.

Weighed against the negligible interest in perpetuating secrecy, I find the plaintiffs' need for the grand jury report to be compelling. In the circumstances here presented,[9] the potential value of the grand jury records as a source for identifying witnesses whose testimony could be relevant and material appears obvious. The documents in question may lead both the plaintiffs and the defendants to admissible evidence not considered by the grand jury. While it is unclear whether preserving testimony of witnesses now unavailable is a disclosure concern, the grand jury report obviously may be useful at trial for impeachment and refreshing recollection.

For the reasons discussed, I find and conclude that the plaintiffs have demonstrated a particularized need sufficient to overcome any interest in further secrecy.

9. Plaintiffs claim, *inter alia,* that the Greenwood Village police department's inadequate investigation and subsequent destruction of virtually all physical evidence related to Lawrence Ocrant's death has denied them their constitutional right of access to the courts. The primary, if not sole, evidence relating to that claim may exist only within the grand jury report, testimony transcripts and exhibits. Further, while I express no opinion on the issue, it may well be that those same materials could benefit the defense of the action.

c. Third Requirement: Narrow Request.

■ The United States Supreme Court has noted that courts have been reluctant to lift the veil of grand jury secrecy. *Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1672–73. The Court has stated, however, that "in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings." *Id.* at 219–20, 99 S.Ct. at 1672–73. At least two courts have held that requests seeking complete grand jury records are not sufficiently limited to meet the third *Douglas Oil* requirement. *See Lucas,* 725 F.2d at 1108; *Shell,* 760 F.Supp. at 549.

I find sufficiently narrow the plaintiffs' request for the remainder of the grand jury report not already disclosed to them, after redaction by this court *in camera* of material not necessary or appropriate for discovery in this case. Because the plaintiffs have made a showing of particularized need for the grand jury report under the *Douglas Oil* criteria, their motion is granted on the terms above outlined.

## B. Gates' and Sexton's Motion For Disclosure of Other Grand Jury Materials.

■ Defendants Gates and Sexton have filed a motion seeking this court's order allowing them to copy all grand jury transcripts and exhibits previously released by the state court to the defendant City of Greenwood Village. This motion is but one among numerous motions that have been filed and, absent a final decision, probably will continue to be filed in both this court and the state court seeking disclosure of grand jury transcripts and exhibits. Chief Judge Steinhardt, in her discretion, some time ago released to some of the parties certain portions of those materials. In her more recent orders, however, Judge Steinhardt has deferred to this court to determine whether and to what extent these grand jury materials should be released, and to whom. It has thus become incumbent upon this court to determine with finality the disclosure issue.

Accordingly, in a letter dated August 16, 1991, this court requested that Judge Steinhardt forward, for *in camera* review as possible evidence in this action, all grand jury exhibits, transcripts of grand jury proceedings and grand jury reports that had not already been forwarded. The originals of the requested documents were delivered to this court on August 19, 1991.

During the subsequent *in camera* inspection, this court reviewed every document in the grand jury file. Where necessary to eliminate information not discoverable in this lawsuit or to preserve needed secrecy, the integrity of the grand jury system or its future functioning, I have made redactions. In considering whether the grand jury materials should be disclosed, I have been mindful of the Tenth Circuit's view that it is within a federal district court's province to determine whether disclosure of state grand jury materials is essential to a case properly before it. *Tynan,* 757 F.2d at 1090.

Turning, then, to the considerations underlying my decision, I note that pursuant to 42 U.S.C. § 1983, the plaintiffs here allege deprivations of fundamental constitutional rights. A primary and essential function of a federal court is to provide a forum for addressing alleged violations of civil rights guaranteed by the Constitution and federal statutes. Obviously, seeking the truth and obtaining redress for wrongs, if wrongs have occurred, is the objective and obligation of any federal court. It is beyond question that the search for truth is frustrated if evidence essential to the prosecution and defense of a civil rights action is left shrouded in secret seclusion to the benefit of no one and the detriment of the parties and public generally.

Courts are public institutions. They exist not only for the benefit of the parties and their lawyers, but also to serve the public interest in seeing that justice is done. Generally, therefore, court files and records are public, and where exceptions to public disclosure apply, they should be narrowly construed. At least to the extent consistent with law, those with standing to assert claims should be granted unfettered access to the judicial machinery.

In light of these considerations and based on my entire review of the matter, I find and conclude that disclosure of the remainder of the grand jury file—including exhibits, partially redacted transcripts, photographs, and other documents—is essential to a just resolution of this action. Accordingly, it is ordered that the grand jury file in its present redacted condition be disclosed to the attorneys for all parties, who shall be granted equal access. Defendants' motion is thus rendered moot.

### C. Motion re Release of James Clement From His Secrecy Oath.

Plaintiffs separately have moved for an order releasing James Clement from his oath of secrecy. Plaintiffs assert that Clement has offered to assist them in their investigation of the facts provided that this court releases him from his oath of secrecy. They seek his help "for the limited purpose of assisting Plaintiffs and Plaintiffs' attorneys in their discovery and investigation of the matters related to their claims." (Plaintiffs' brief, p. 2).

Defendants have responded by opposing the motion. Alternatively, they request: (1) that all parties be granted equal access to Clement's knowledge of the facts (Greenwood's brief, p. 4); (2) that Clement be released from his oath solely for the purposes of deposition to be attended by all parties with notice to the Denver District Attorney's Office (*id.* at pp. 4–5; Arapahoe County's brief, p. 2); and (3) that Clement be prohibited from speaking with any one party alone (*id.*, Arapahoe County's brief).

Chief Judge Steinhardt denied the plaintiffs' prior motion to release Clement from his secrecy oath on December 14, 1990, "without prejudice for the trial judge to determine the necessity of his being released from his oath of secrecy." (*See* Sueann Ocrant's brief, Ex. A, p. 2). Consistent with her view on disclosure of the grand jury materials, Judge Steinhardt thus has stated her opinion that the secrecy oath issue is for this court to decide.

From the bench at the August 9, 1991 hearing, I ordered Clement released from his oath of secrecy for many of the reasons already discussed as to the grand jury records. As stated before, the Arapahoe County statutory grand jury's term expired without an indictment in this matter. Clement has indicated a willingness to assist the parties in discovery of the facts underlying this case about which he, as the grand jury's special investigator, possesses special knowledge.

For reasons previously recited, neither the interest of justice nor the law requires that the facts of the grand jury's investigation remain secret. It seems obvious that the grand jury's chief investigator could help the parties to understand the investigation he conducted and its fruits in the grand jury files.

Moreover the public has a legitimate interest in this case insofar as it draws into question the integrity of an official police homicide investigation. No discernable secrecy interest countervails the public's substantial right to know.

For those reasons, I have ordered James L. Clement released from his oath of secrecy. I decline to impose special limits on discovery related to Clement; the Federal Rules of Civil Procedure provide fair and adequate guidelines.

Accordingly, IT IS ORDERED that:

(1) the plaintiffs' motion for release of the 1989 Arapahoe County statutory grand jury report, to the extent it is related to Lawrence Ocrant's death, is granted;

(2) all grand jury materials not withheld or redacted by this court that are contained in the 1989 Arapahoe County statutory grand jury file forwarded to this court by Chief Judge Joyce Steinhardt are ordered to be made available to all parties to the action for copying;

(3) Gates' and Sexton's motion for an order allowing them to copy those grand jury materials previously released to the City of Greenwood Village is denied as moot;

(4) the plaintiffs' motion to release James L. Clement from his oath of secrecy is granted. No special limits are placed on Clement's freedom to

802

discuss this matter with any party to this action or that party's attorney; and

(5) the parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding, would facilitate settlement.