**RESOLUTION TRUST CORPORATION,** in its corporate capacity and as Receiver for Colonial Federal Savings Association, formerly known as Colonial Savings Bank, S.L.A., Plaintiff,

v.

**Marisa del Re CASTELLETT, et al., Defendants.**

**Civ. No. 92–4635(AMW).**

United States District Court, D. New Jersey.

June 8, 1994.

Nagel & Rice, Federbusch & Fiedler, for plaintiff.

McDonough, Korn & Eichhorn, Epstein, Eptein, Brown & Bosek, Hoagland, Longo, Oropollo & Moran, Wilentz, Goldman & Spitzer, P.C., Buttermore, Mulen, Jeremiah & Phillips, Lane & Mittendorf, Seth D. Levine, Pisano & Triarsi, Shanley & Fisher, Tomp-

---

kins, McGuire & Wachenfeld, James P. Beggans, Jr., David Goldberg, Richard C. Rosen.

Marisa del Re Castellett, pro se.

Michael P. Shea, pro se.

## OPINION

PISANO, United States Magistrate Judge:

### INTRODUCTION

This matter comes before the Court upon the motion of plaintiff Resolution Trust Corporation ("the RTC") to enforce its *subpoena duces tecum* on the District Attorney of the State and County of New York ("the District Attorney"). Defendant Stephanie Shea has filed opposition to the RTC's motion. At the request of the Court, the parties have also filed supplemental submissions directed to the issues of comity and federalism raised by the RTC's motion.

### BACKGROUND

The instant matter arises out of a suit by the RTC alleging that Antonino Castellett and others engaged in a conspiracy to fraudulently acquire Colonial Savings Bank. Defendants Antonino Castellett, Stephanie Shea and Michael Shea had also been the subject of a grand jury investigation in the Supreme Court of the State of New York ("the Criminal Matter"). On November 26, 1991, the grand jury in this matter returned an indictment charging Antonino Castellett and the Shea defendants with conspiracy to fraudulently obtain financing for their sulphur trading business from six commercial banks. The indictment also charged Antonino Castellett and the Sheas with falsifying business records, grand larceny, and fraud in insolvency. The indictment also accused Castellett and the Sheas of providing falsely inflated financial statements and invoices to obtain loans.

In November 1992, Justice John A.K. Bradley of the New York State Supreme Court ruled that the search warrant the District Attorney had used to obtain the docu-

ments from Antonino Castellett's various companies was overbroad and illegal. The District Attorney's Office informed Justice Bradley that it lacked sufficient evidence, independent of that which was illegally seized, to prosecute the case. On May 20, 1993, Justice Bradley granted the District Attorney's motion to dismiss the indictment against all three individuals. Justice Bradley stayed sealing the file in the Criminal Matter, pursuant to N.Y.Crim.Proc. § 160.50, awaiting the District Attorney's filing of a formal statement explaining its reasons for seeking dismissal of the indictment, or the end of 90 days, whichever occurred first. (Barrett Aff. in Supp. of Motion to Quash, at ¶ 10). Because the District Attorney never filed the afore-mentioned statement, the file has been sealed by operation of law since on or about August 20, 1993.

On October 8, 1993, the RTC filed a motion in the New York State Supreme Court to obtain access to all exhibits and evidence submitted to the grand jury in the Criminal Matter, pursuant to N.Y.Crim.Proc. § 190.-25.4(a). On October 21, 1993, the RTC served a *subpoena duces tecum* on the District Attorney requesting:

> [a]ll documents in the possession of you, your employees, or agents touching on, connected with, or arising out of the grand jury investigation that was brought in the Supreme Court of the State of New York, County of New York entitled *The People of the State of New York vs. Antonino Castellett, Stephanie Shea and Michael Shea,* No. 13270–91 including but not limited to all documents attached hereto as Exhibit "A." [1]

(Barrett Aff. in Supp. of Motion to Quash, Exhibit D).

On October 28, 1993, defendant Stephanie Shea moved to quash the subpoena. In a letter dated October 27, 1993, Assistant District Attorney Andrew Curtin stated that the District Attorney's Office would not produce the documents during the pendency of defen-

---

**1.** Exhibit "A" is the subpoena served on Durant, Sabanosh, Nichols & Houston ("Durant") which requests documents relating to its legal representation of various corporations and individuals, including defendants, and documents relating to Durant's malpractice insurance. (Barrett Aff. in Supp. of Motion to Quash, Exhibit D).

dant Shea's motion and reserved the right to object to disclosure of the documents, pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure.[2] On November 30, 1993, the RTC filed opposition to defendant Shea's motion. Pending the outcome of Stephanie Shea's motion to quash the subpoena, RTC's state motion was taken off the calendar.

On December 14, 1993, the Court heard oral argument on defendant Stephanie Shea's motion to quash the RTC's subpoena. In a short Opinion and Order issued the same day, the Court stayed ruling on defendant's motion, pending the outcome of the RTC's application in state court to unseal the records. The Court based its decision on *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 644 (7th Cir.1980), in which the Seventh Circuit indicated that a federal court should await the conclusion of state proceedings regarding the scope of a state secrecy requirement attached to grand jury documents before deciding whether a federal subpoena of such documents should be enforced.

The RTC amended and reissued its subpoena on December 17, 1993. The new subpoena requests the District Attorney to provide:

> [a]ny and all documents in the possession of the District Attorney or any of his agents, employees or other representatives which were obtained from third parties and which touch upon, are connected with, or relate to the criminal investigation of Antonino Castellett, Stephanie Shea, and Michael Shea and/or any entities or persons affiliated with them. These documents exclude anything generated by or on behalf of the grand jury in the matter of *People v. Antonino Castellett, Stephanie Shea and Michael Shea,* No. 13270–91.

(Mazie Aff. in Supp. of Motion to Enforce, Exhibit D).

On January 5, 1994, Justice Bradley issued a Decision denying the RTC's application. Justice Bradley recognized that:

> [s]hould this court not cause the documents to be released, RTC would have to obtain the same documents by subpoena from many different sources, some of them overseas. This ... would require great effort and expense by the RTC. A compelling and particularized need for the evidence has thus been demonstrated.

*In re Resolution Trust Corporation,* SCID 23217/93, slip op. at 2 (N.Y.Sup.Ct. Jan. 5, 1994). However, Justice Bradley then found that the motion should be decided under N.Y.Crim.Proc.L. § 160.50, New York's statutory provision requiring the sealing of records in criminal matters terminated in favor of an accused individual, rather than under N.Y.Crim.Proc.Law 190.25(4)(a), which concerns disclosure of documents relating to grand jury proceedings. *Id.* at 3. After discussing the relevant case law, Justice Bradley denied the RTC's application for disclosure "as to all documents and other evidence obtained by the New York County District Attorney's Office during the course of this investigation." *Id.* at 5.[3]

By letter dated January 19, 1994, Assistant District Attorney Curtin informed the RTC's counsel that, due to Justice Bradley's decision, the District Attorney could not comply with the RTC's subpoena. On January 20, 1994 the RTC filed a motion to enforce its subpoena. Counsel for defendant Stephanie Shea informed the Court that, as opposition, Ms. Shea would rely on her submissions filed in the motion to quash the original subpoena. Once again, the District Attorney took no position as to the outcome of the motion.

After the Court reviewed the parties' submissions, the Court issued a Letter Order dated April 11, 1994 requiring the parties to submit additional briefing on the issues of comity and federalism.[4] As will be discussed

---

2. The District Attorney never moved to quash the subpoena.

3. The RTC has not appealed Justice Bradley's decision and the time for doing so has passed, pursuant to N.Y.Civ.Prac.L. & R. § 5515 (McKinney 1993). Therefore, Justice Bradley's decision constitutes a final order.

4. The Court raised these issues at oral argument on December 12, 1994. The brief filed by the RTC in connection with its motion to enforce the subpoena summarily addresses these issues in a footnote. (Pl.'s Br. in Supp. of Motion to Enforce, at 7 n. 2).

*infra,* these issues are critical to determination of the instant motion.

## DISCUSSION

The Supreme Court has defined "comity" as:

a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... [T]he concept ... represent[s] ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests always endeavors to do so in ways that will not unduly interfere with the legitimate activity of the States.

*Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

The key issue before this Court is whether it may enforce a private litigant's subpoena of records sealed pursuant to state court order. The few cases addressing whether a federal trial court may order the unsealing of records previously sealed by a state court acknowledge, albeit to varying degrees, the sensitive issues of comity and federalism raised by the request for such an order.

The RTC maintains that the Court's analysis should begin with Rule 6(e) of the Federal Rules of Criminal Procedure, which provides in pertinent part:

Recording and Disclosure of Proceedings.

(2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing

violation of Rule 6 may be punished as a contempt of court.

(3) Exceptions

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury;

(iii) when the disclosure is made by an attorney for the government to another federal grand jury; or

(iv) when permitted by a court at the request of an attorney for the government, upon a showing that such matters may disclose a violation of state criminal law, to an appropriate official of a state or subdivision of a state for the purpose of enforcing such law. If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), sets forth the proper procedure for disclosure of federal grand jury materials in subsequent federal civil litigation. The Supreme Court recommended a bifurcated process wherein the court which had supervised the grand jury proceedings determines whether there is a continued need for secrecy, and, if there is not, the court in the civil case decides whether there is a need for disclosure. *Id.* at 230–31, 99 S.Ct. at 1678–79.

*Socialist Workers Party v. Grubisic,* 619 F.2d 641 (7th Cir.1980) applied the *Douglas Oil* approach to federal disclosure of state grand jury matters. *Grubisic* involved the appeal of a non-party county prosecutor from a district court order requiring him to produce grand jury transcripts which were subject to a state statutory privilege against disclosure. Unlike the instant case, no state court had issued a sealing order. Rather,

the issue before the court was whether a state statutory privilege applied in federal court. The Seventh Circuit first noted that because the underlying case arose under federal law, the privileged nature of the documents under the state law was not controlling. *Id.* at 643. The court then held that:

> when state grand jury proceedings are subject to disclosure, **comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy.**

*id.* at 644. (Emphasis added).

This Court relied on *Grubisic* as persuasive authority in ordering that defendant Shea's motion to quash the subpoena be stayed pending Justice Bradley's decision in state court. This Court also relied upon *United States ex rel. Woodard v. Tynan* ("*Tynan I*"), 757 F.2d 1085 (10th Cir.1985), *modified,* 776 F.2d 250 (10th Cir.1985) ("*Tynan II*"). *Tynan I* concerned an appeal from a dismissal of a False Claims Act case brought by the Colorado State Attorney General. The Attorney General alleged that the defendants had filed fraudulent claims against the state medicaid program. In order to prove his case, the Attorney General required access to the ordinary business records of the defendant corporate entities.

As in the instant case, those records had been seized from the defendants pursuant to a state court-issued search warrant issued and were the basis for a state criminal prosecution. The defendants in the state criminal proceeding successfully moved to suppress the use of the records on constitutional grounds. The state trial court ordered the records sealed and the state appellate court affirmed the trial court's ruling.

In the federal action, the Attorney General moved for an order compelling the defendants to consent to release of the documents, pursuant to Rule 34 of the Federal Rules of Civil Procedure. The district court denied the motion and dismissed the case based on the Attorney General's representation that he could not proceed in the federal case without the sealed records.

On appeal, the Tenth Circuit reversed the district court. The Tenth Circuit explained that the district court should not have dismissed the case because it had the power to order the release of the state court records. *Id.* at 1090. Citing *Grubisic,* the court concluded that: (1) a state order cannot foreclose a federal court from access to grand jury materials if a federal district court determines that disclosure is essential in a case properly before it; and (2) in such a case the federal district court should order the state trial court to transmit to it the materials for *in camera* review. *Tynan I,* at 1089–1091.

Judge McWilliams dissented and criticized the *Tynan I* majority for applying *Douglas Oil* and *Grubisic* to the case before it. Judge McWilliams explained that:

> ... a state court protective order is entitled to the respect of the federal courts. State court judgments are entitled to such 'full faith and credit in every court within the United States ... as they have by law and usage in the courts of such state.' 28 U.S.C. § 1738. As stated by the U.S. Supreme Court, '[t]he federal courts ... have ... consistently accorded preclusive effect to issues decided by state courts,' noting that such a practice 'promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system.' *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 (1980). I believe the decisions of the Colorado trial court and Colorado Court of Appeals, holding that the records are grand jury materials entitled to secrecy, should be respected by the federal courts.

*Tynan I* at 1093 (McWilliams, C.J., dissenting).

The Tenth Circuit granted rehearing in *Tynan II* because it acknowledged that the question of whether a federal court has the power to order a state court to release documents it placed under seal "appeared to raise important questions under the Supremacy and Full Faith and Credit Clauses of the United States Constitution." *Tynan II,* 776 F.2d at 251. However, rather than grapple with these questions, the Tenth Circuit ordered that the defendants apply to the state

district court for the return of the sealed business records, so that the Attorney General could request those documents from the defendants pursuant to Rule 37 of the Federal Rules of Civil Procedure. *Tynan II* at 252.

*Shell v. Wall,* 760 F.Supp. 545 (W.D.N.C. 1991) more directly addressed the comity problems inherent in a movant's request for a federal order requiring release of state grand jury materials. The defendants in *Shell* had been the subjects of a county grand jury report. They moved unsuccessfully in state court for the release of the grand jury transcripts. The defendants then filed a motion in the federal civil suit for an order compelling the state court to produce the transcripts. The plainspoken District Judge Potter denied the motion and declared that:

> [a]s an initial matter, the Court believes that Defendants' motion is procedurally flawed. Defendants have basically requested that this Court act as a state appeals court and reverse an order by the [state] court. The Court finds the intrusion into what is a statutorily defined part of the state court ... to be deeply offensive to the notion of federalism, and one that should be avoided if at all possible. (Citations omitted).

*Id.* at 546.

Judge Potter proceeded to criticize the defendants for not having first requested the documents through a *subpoena duces tecum,* pursuant to Rule 45(b) of the Federal Rules of Civil Procedure, before asking the court to issue "the extraordinary order sought." *Id.* at 547. Judge Potter then explained that he would have denied the motion even if the defendants had followed the normal discovery procedures because the defendants had not demonstrated "particularized need," as they were required to under *Douglas Oil.* Id.

This Court's research has unearthed only one case, *Stump v. Gates,* 777 F.Supp. 796 (D.Colo.1991), in which a federal court underwent the procedure set forth in *Grubisic* and

*Tynan I,* ordered the disclosure of state grand jury materials, and was not ultimately reversed.[5] *Stump* was a civil rights action arising out of a death that had been the subject of a state grand jury investigation. The plaintiffs sought release of the grand jury report and the release of the grand jury's special investigator from his secrecy oath. Before they filed suit in federal court, the plaintiffs filed a motion in state court for release of the grand jury report. *Id.* at 798. The state court found that the plaintiffs did not have a "particularized need" for the report and declined to order its disclosure. *Id.* However, the state court indicated that if the plaintiffs instituted a civil action, the judge in that action should determine whether to release the grand jury report. *Id.*

The plaintiffs then filed in state court an amended motion for release of the grand jury report, exhibits and transcripts. *Id.* The state court granted the plaintiffs access to the exhibits and testimony transcripts. However, the court refused to order disclosure of the grand jury report and reiterated that the trial judge in the pending suit should determine whether the report was relevant to the suit and should therefore be released. *Id.* at 798–99.

Subsequently, the plaintiffs filed suit in federal court and moved for the release of both the grand jury report and the grand jury's special investigator from his secrecy oath. *Id.* The plaintiffs also moved once more in state court for the release of the grand jury report. *Id.* at 799. The state court denied the plaintiffs' motion and explained:

> This Court finds that it is appropriate that the trial judge make the decision as to whether the [grand jury] report is relevant and should be released to any or all of the parties.
>
> The Court will be happy to release the Grand Jury report to the federal judge presiding over this matter.

*Id.*

After undergoing the need analysis set forth in *Douglas Oil Co. v. Petrol Stops*

---

5. In *Lucas v. Turner,* 725 F.2d 1095 (7th Cir. 1984), the Seventh Circuit reversed the district court's unpublished decision ordering disclosure of state grand jury materials. The Seventh Circuit held that the movants had not met the "particularized need" test set forth in *Douglas Oil. Id.* at 1108.

*Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the federal court granted the plaintiffs' motions for release of the report and the grand jury investigator from his secrecy oath. *Stump,* 777 F.Supp. at 807. In reaching this decision, the court noted that the state court had willingly given it the grand jury report for an *in camera* review, *id.* at 803, and that:

> because [the state court] has indicated in prior orders [its] willingness voluntarily to transmit the grand jury report to this court, this case does not raise the sensitive comity issue whether federal courts have authority to order state courts to disclose state grand jury records,

*id.* at 801.

*Stump* considered and distinguished *Shell:* The defendants' motion in *Shell* sought a federal court *order* requiring the state court to disclose grand jury materials. The federal court's primary reason for denying the motion was its belief that such an order would be 'deeply offensive to the notion of federalism.' (citation omitted). As noted, no such comity issue is involved here.

*Id.* at 803.

*Stump* is distinguishable from the present case in several respects. In *Stump,* the state court repeatedly expressed its willingness to acquiesce to the federal court's determination regarding the release of the grand jury report. Indeed, the state court said it would be "happy" to furnish the federal court with the grand jury report. *Id.* at 799.

In contrast, Justice Bradley has not indicated that the New York Supreme Court considers itself bound or even affected by the decision of this Court regarding the disputed documents. Nor has Justice Bradley voiced a willingness to deliver the documents to this Court for an *in camera* review. Nothing in Justice Bradley's decision indicates anything other than that the relevant file is permanently sealed. Therefore, the instant case poses the comity dilemma which was present in *Shell* and absent from *Stump.* By re-

questing this Court to file an order requiring the state court to disclose the requested materials, the movant essentially asks this Court to act as a state appellate court.[6] As discussed in *Shell,* such a request is "deeply offensive to the notion of federalism." *Shell,* 760 F.Supp. at 546.

The instant case is further complicated by Justice Bradley's ruling that the records at issue were sealed pursuant to New York's sealing statute, N.Y.Crim.Proc.Law § 160.50, rather than being sealed pursuant to its grand jury secrecy statute, N.Y.Crim.Proc. Law § 190.25.4(a). Justice Bradley reasoned that:

> [i]n the instant case, after the court had suppressed the search warrant, the district attorney moved for the dismissal of the indictment. Ninety days after the dismissal, the records were sealed.... In light of the procedural posture of this case, the Court concludes that the issue of sealing is governed by [N.Y.Crim.Proc.Law §] 160.50 because this is not an issue of Grand Jury secrecy but rather of the right of an accused to sealing when his criminal record is terminated.

*In re Resolution Trust Corporation,* slip op. at 3.

Section 160.50 provides in pertinent part:

> 1. Upon the termination of a criminal action or proceeding against a person in favor of such person ... unless the district attorney upon motion with not less than five days notice such person or his attorney demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person or his attorney determines that the interests of justice require otherwise and states the reason for such determination on the record, the record of such action or proceeding shall be sealed....

> (c) all official records and papers ... relating to the arrest or prosecution ...

---

6. The instant case is also distinguishable from *Grubisic* for this reason. As Judge McWilliams noted in his *Tynan I* dissent, because in *Grubisic* no state court had issued a protective or sealing

order, "[t]he federal court was not clearly contravening a state court order." *Tynan I,* 757 F.2d at 1092 n. 2 (McWilliams, C.J., dissenting).

shall be sealed and not be made available to any person or public agency....

Section 160.50(d) sets forth persons and agencies to whom the sealed files may be made available. These include the person accused and a law enforcement agency if the interests of justice so require. Justice Bradley determined that the RTC, although acting in the public interest, is not a law enforcement agency within the meaning of section 160.50(d). *In re Resolution Trust Corporation*, slip op. at 5.

Therefore, this case is different from *Grubisic* and its progeny in that the focus of the analysis is no longer the secrecy privilege afforded grand jury matters, which is addressed in both federal and state law. The focus of the analysis is now the sealing of documents pursuant to N.Y.Crim.Proc.Law § 160.50, which has no federal law parallel. Under section 160.50, the state court evaluated and rejected the RTC's request for the documents at issue. This Court believes that 28 U.S.C. § 1738 requires it to afford full faith and credit to the state court's ruling on this issue of state law. Therefore, this Court will not use its subpoena enforcement powers to effectively reverse the state court's final ruling.[7]

### CONCLUSION

For the afore-mentioned reasons, the RTC's motion to enforce its *subpoena duces tecum* on the District Attorney's Office is denied.

---

[7]. The Court is not called upon at this time to decide whether the RTC may obtain the requested materials through other means. However, the Court notes that defendant Stephanie Shea has access to the materials, pursuant to N.Y.Crim.Proc.Law § 160.50(d), which provides that "such records shall be made available to the person accused." Nothing in this Opinion is to be construed as precluding the RTC from requesting the documents from Ms. Shea, pursuant to Rule 34 of the Federal Rules of Civil Procedure.